COMMONWEALTH, by Commissioner of Savings Banks, *vs.* LANCASTER SAVINGS BANK, William H. McNeil & others, receivers, petitioners.

Worcester.    Oct. 23, 1877. — Jan. 3, 1878.    LORD & SOULE, JJ., absent.

The tax, imposed on savings banks, by the Sts. of 1862, *c.* 224, and 1868, *c.* 315, to be assessed annually on each bank, one half on the average amount of deposits for the six months preceding the first day of May, and the other half on the average amount for the six months preceding the first day of November, is an excise tax upon the value of the franchise of a bank on those days; and if on either day such

bank is in the hands of receivers, and perpetually enjoined from doing business by a decree of this court, it is not liable to pay any part of the tax assessed on that day, although it has transacted business during a part of the six months preceding.

PETITION IN EQUITY, filed April 26, 1877, alleging that on December 22, 1875, the defendant corporation was temporariiy enjoined from doing any further business; that on December 30, 1875, by a decree of this court, the injunction was made perpetual and the petitioners were appointed receivers to wind up the affairs of the corporation, and immediately entered upon the discharge of their duties; that the corporation was permitted to continue its organization only to do such acts as the petitioners in the performance of their duties might request of its officers in settling its affairs, and was deprived of the privilege of transacting the business for which it was incorporated and the right to use and exercise its franchise as a savings bank and of the profits and benefits to be derived therefrom; that the treasurer of the Commonwealth had called upon the corporation to make a return of the amount of its deposits on May 1, 1876, and of the average amount of its deposits for the six months preceding May 1, 1876, and claimed from the corporation the payment of a tax of three quarters of one per cent. under the St. of 1868, c. 315, on the amount of its deposits, to be assessed on the average amount of its deposits for the six months preceding May 1, 1876, and had made a demand upon the petitioners for the payment of such tax; and that the corporation had not made such return, nor had any assessment of such tax been made by such treasurer.

The prayer of the petition was for the instructions of the court, as to whether the claim was valid against the corporation or the petitioners, or whether the petitioners should pay the amount of the tax to the treasurer of the Commonwealth, or whether the corporation was now required by law to make the returns required by the St. of 1862, c. 224, §§ 8, 9, or liable to the penalties of § 11, and the St. of 1867, c. 52, for neglecting to make such returns or pay such taxes, or whether it was the duty of the president and treasurer of the corporation to make application to the petitioners for the use of the books of the corporation in their possession in making such return, or whether

it was the duty of the petitioners to grant access to the books to such officers for that purpose.

Service was made upon the Attorney General, who appeared and admitted the truth of the facts stated in the petition; and the case was heard upon these facts by *Gray*, C. J., who made a decree that the corporation was not required to make such returns, and was not liable for the tax claimed by the treasurer of the Commonwealth, that the claim of the treasurer was not valid, and that it was not their duty to grant access to the books of the corporation to its officers to enable them to make such returns, and directing them not to pay the tax to the treasurer of the Commonwealth.

From this decree the Attorney General appealed to the full court.

*E. A. Kelly*, for the petitioners, was stopped by the court.

*W. C. Loring*, Assistant Attorney General, for the Commonwealth.

ENDICOTT, J.   The Constitution of the Commonwealth provides, that the Legislature may impose and levy reasonable duties and excises upon any produce, goods, wares, merchandise and commodities whatsoever, brought into, produced, manufactured or being within the state. Const. Mass. *c.* 1, § 1, art. 4. A duty or excise may thus be exacted not merely upon certain articles produced or brought into the state, but also upon any commodities whatsoever. "Commodity" is a general term, and includes the privilege and convenience of transacting a particular business; and, upon persons carrying on such business, it has never been questioned that the Legislature may levy an excise, or provide that a license must be obtained in order to transact it. See Gen. Sts. *c.* 50. And, when a number of persons are incorporated by the Legislature for a special purpose, or, being incorporated by another state, have an office or place of business within the Commonwealth, upon the franchise thus conferred or exercised, an excise may be laid. *Portland Bank* v. *Apthorp*, 12 Mass. 252. *Attorney General* v. *Bay State Mining Co.* 99 Mass. 148. It is not a tax upon property, though the amount of the capital stock, or the extent of the business transacted, may properly afford the means of computing the amount of the tax. It was said by Mr. Justice Wells, in *Attorney General* v. *Bay State*

*Mining Co.*: "In case of domestic corporations, it is based upon a valuation which involves an estimate of all the advantages, present and prospective, which the stock is supposed to derive from the combination of capital and the exercise of all the rights and privileges enjoyed by the corporation in the conduct of its business." Being a tax upon the privilege of transacting a particular business, it would seem necessarily to follow that if, at the time when the tax is to be assessed and is declared to accrue, the corporation has for the purpose of transacting its business practically ceased to exist and can no longer enjoy the privilege, then no tax is to be exacted.

By the statutes of this Commonwealth, savings banks are required to pay a tax of three quarters of one per cent. upon their deposits, to be assessed one half on the average amount of their deposits for the six months preceding the first day of May, and the other half in like manner preceding the first day of November of each year, and their officers are required to make return of the same on or before the second Mondays of those months. Sts. 1862, *c.* 224, §§ 4, 5, 8, 9, 11, 12; 1868, *c.* 315. The St. of 1862, was passed April 30 of that year, and the power of the Legislature to impose such a tax upon the franchise of savings banks, and the right to assess it on the average amount of deposits for the six months preceding the first day of May of that year, were upheld in *Commonwealth* v. *People's Five Cents Savings Bank*, 5 Allen, 428. The grounds upon which that decision was based are in the opinion of the court decisive of this case. It was there held that the excise was not laid on the property of the bank, or its depositors, or the business which the bank transacted during a given period, but upon the value of the franchise on the first day of May, or in other words, on its capacity to transact business on that day; and that the extent of its capacity on that day could properly be determined by the amount of its business during the preceding six months. That amount would disclose its capacity and the value of the privilege and benefit it enjoyed under its charter on the day when the tax was assessed. See *Commonwealth* v. *Provident Institution for Savings*, 12 Allen, 312. In the case at bar, the Lancaster Savings Bank was, by the decrees of this court, in December, 1875, placed in the hands of receivers, and perpetually prohibited

from transacting the business for which it was incorporated, and deprived of the right to exercise its franchise, and of the profit and benefit to be derived therefrom. The receivers proceeded at once to wind up the affairs of the bank, and the organization of the bank existed only for the purpose of executing such deeds and papers as might be necessary to enable the receivers to perform their duties. Without considering the question whether the franchise could be said to exist on the first day of May following, it is very clear that as a privilege to transact business on that day it did not exist. Its officers could not be required to make return, and no tax could be levied as of May 1, 1876, under the existing provisions and law. See *Jones* v. *Winthrop Savings Bank,* 66 Maine, 242. If in December, 1875, there had been no statute imposing a tax on the franchise of savings banks, and in April, 1876, a statute similar to the St. of 1862, had been enacted, it would hardly be contended that it could apply to a bank then in the hands of receivers and perpetually enjoined from the transaction of all business. And yet it is impossible, under the authorities cited, to distinguish such a case from the case at bar.

Other provisions of the St. of 1862, *c.* 224, confirm this construction. When a savings bank fails to pay the taxes imposed by that act, the treasurer of the Commonwealth may bring an action for their recovery, and it may also be liable to an injunction restraining it from prosecuting its business until the taxes are paid. § 11. See also St. 1867, *c.* 52. It is clearly to be inferred from these provisions, that the corporations, upon which taxes are to be imposed by the statute, are those which are in the exercise of their corporate powers, and against which the proceedings and penalties provided may be enforced; and not those in the hands of receivers and perpetually enjoined from transacting business. *Columbian Book Co.* v. *De Golyer,* 115 Mass. 67, 69.

We are of opinion that the decree of the Chief Justice was correct in directing the receivers that the claim of the Commonwealth to recover a tax as of May 1, 1876, was invalid.

*Decree affirmed.*