COMMONWEALTH, by Board of Commissioners of Savings Banks, *vs.* BARNSTABLE SAVINGS BANK. Charles Endicott, Treasurer of the Commonwealth, petitioner.

Suffolk. March 24. — May 10, 1879. AMES & LORD, JJ., absent.

A savings bank is liable to the tax imposed by the Sts. of 1862, *c.* 224, and 1868, *c.* 315, one half on the average amount of deposits for the six months preceding the first day of May, and the other half on the average amount for the six months preceding the first day of November, although it is on one of those days, and has been, for more than six months preceding, temporarily prohibited by a writ of injunction, issued on the petition of the commissioners, from proceeding with its business, except in receiving and collecting money due to it, in making investments in specified securities, and in foreclosing mortgages and selling land held by foreclosure; and although it is after May 1 perpetually restrained from doing business, and receivers are appointed.

PETITION IN EQUITY, filed February 21, 1879, alleging that on May 1, 1878, the sum of $4842.38 was duly assessed upon the defendant corporation, being a tax of three eighths of one per cent on the average amount of deposits therein for six months preceding said May 1; that on May 23, 1878, said corporation was, by a decree of this court, perpetually restrained from the exercise of its franchise, and receivers were appointed to wind up the affairs of the corporation; that demand had been made upon the corporation and upon the receivers for the payment of the tax, but payment had been refused. The prayer of the petition was that the receivers be ordered to pay said tax with interest, and for further relief. The answer of the receivers admitted that the tax was assessed; but alleged that, at the time for which the tax was assessed, the defendant corporation was restrained from doing business by an injunction issued from this court.

The case was heard by *Ames,* J., and reserved for the consideration of the full court, upon the petition and answer and the following agreed facts:

On September 28, 1877, the board of commissioners of savings banks filed in this court a petition against the defendant corporation, setting forth that, upon an examination of the condition of the corporation, they were of opinion that its condition was such as to render its further proceeding hazardous to the public and

to those having funds in its custody; and praying that a writ of injunction might issue, commanding the corporation and its officers and agents to refrain from further proceeding with the business of the corporation, except so far as might be necessary to maintain and continue the organization of the corporation, until a hearing could be had upon this petition; and that, after such hearing, the court would appoint one or more trustees or receivers to take possession and control of the property and effects of the corporation, subject to the order of the court; and for an order to show cause why such injunction should not be made perpetual, and receivers appointed.

On the same day, a writ of injunction issued restraining the corporation and its officers and agents from further proceeding with the business of the corporation, except so far as might be necessary to maintain and continue its organization, and to collect and receive moneys due it, and on payment thereof give receipts therefor, and release, assign, discharge, or otherwise convey to the debtor any property or estates held by the corporation as security therefor, until a full hearing could be had, and until the further order of the court; and ordering notice to the corporation in accordance with the prayer of the petition.

On October 16, 1877, the injunction was modified by giving the corporation authority to do the following acts in addition to those first authorized: " 1. To bring suits, and to do all other things necessary to collect moneys or property due to said bank. 2. To invest any money which it may have on hand in the securities specified in the St. of 1876, *c.* 203, § 9, *cl.* 2, 5; provided, however, that no loan is to be made under the fifth clause to any person not a depositor in the bank; and provided further, that, in addition to the securities prescribed in said clause, the bank-book of each depositor, borrowing as aforesaid, be assigned to the bank as collateral security for said loan; and provided further, that in no case shall a greater sum be lent to any depositor than one half the sum due on said bank-book, assigned as aforesaid. 3. To take possession of any real estate on which it holds a mortgage for breach of condition, and for foreclosure, and to proceed with such foreclosure with the same force and effect as if said injunction had not been issued. 4. To purchase any real estate which it shall sell in foreclosure of any mortgage, when-

ever the power of sale in the mortgage permits such purchase.
5. To invest the proceeds of any foreclosure sale of real estate in
a mortgage or mortgages of the real estate so sold, in conformity
with the St. of 1876, c. 203. 6. To sell and convey any prop-
erty which it may hold by foreclosure or release of the equity of
redemption by the owners thereof; provided, however, that the
terms of the sale be first approved in writing by the board of
commissioners of savings banks. 7. To pay taxes on property
held by it in fee or in mortgage, and purchase and extinguish
any tax-title, when it shall· deem it necessary for the protection
of its property, and to do any and all other things which it shall
deem necessary for the management, care and preservation of its
property."

The injunction, thus modified, was continued in force until
May 23, 1878, when the court made a decree "that the injunc-
tion heretofore issued in the said cause be, and the same hereby
is, modified so that said corporation, its officers and agents, shall
have no further authority to collect and receive moneys due to
the said corporation, and, in payment thereof, to give receipts
therefor, and release, discharge, assign or otherwise convey to
the debtor any property or estate held by said corporation as
security therefor; and that the said injunction, so far modified,
be, and the same is hereby, made absolute and perpetual." The
decree also appointed receivers, who entered upon the perform-
ance of their duties, and have ever since been winding up the
affairs of the corporation.

The treasurer of the Commonwealth assessed upon the cor-
poration a tax of three eighths of one per cent on the average
amount of its deposits for the six months preceding May 1,
1878, and on May 25 gave notice to its treasurer, who was one
of the receivers, of the tax, and required payment thereof within
ten days after the first Monday of June then next ensuing.
The receivers deny the authority of the treasurer of the Com-
monwealth to assess the above tax while the corporation was
under injunction, and have refused to pay the same.

*G. Marston*, Attorney General, & *F. H. Gillett*, Assistant At-
torney General, for the petitioner.

*G. A. King*, for the receivers. The power of the Legislature
to impose such a tax as that in question is only to be justified

on the ground that it is a tax upon the value of the franchise of the corporation on the first day of May, or, in other words, that it is a tax on its capacity to transact business on that day; and the extent of its capacity can be properly determined by the amount of its business during the preceding six months. *Commonwealth* v. *People's Five Cents Savings Bank*, 5 Allen, 428. *Commonwealth* v. *Lancaster Savings Bank*, 123 Mass. 493. It was therefore held in the latter case that if a savings bank was, during the six months prior to the first day of May, perpetually prohibited from transacting business, and this prohibition continued on that day, it was not liable to be taxed. The reasons of that decision apply to the case at bar.

This bank was incorporated by the St. of 1831, *c.* 28, for the purposes of receiving and investing deposits, and of dividing the income among the depositors. In *Commonwealth* v. *People's Five Cents Savings Bank*, 5 Allen, 433, Chief Justice Bigelow, speaking of savings banks, says: " The main object for which they are instituted and clothed with corporate powers is, that they may receive on deposit for the use and benefit of the depositors all sums of money offered for that purpose." On May 1, 1878, and for the six months previous, the defendant corporation was prohibited from exercising the main object of its being. It could only maintain its organization and pursue some limited methods of action to secure the funds in its hands against loss. In this condition of things, it cannot be contended that the bank could transact business on the first day of May, or for the six months preceding; and a tax of this kind on a corporation is based upon " the exercise of all the rights and privileges enjoyed by the corporation in the conduct of its business." *Attorney General* v. *Bay State Mining Co.* 99 Mass. 148, 153.

The tax is on the present capacity of a bank to transact business, not on the possibility that it will in the future have such privilege. The tax is on the average amount of deposits during the preceding six months; and this assumes that the deposits would vary by new deposits being received and old ones paid out. Again, the remedy provided by the St. of 1862, *c.* 224, § 11, for the non-payment of such a tax, is by an action of contract by the treasurer in the name of the Commonwealth, and it

is further provided that the corporation may be restrained by injunction from the further prosecution of its business until the tax is paid. It is clear that in the case at bar an action of contract would not lie, and the further provision cannot apply to a bank already restrained.

ENDICOTT, J. This case is to be distinguished from *Commonwealth* v. *Lancaster Savings Bank*, 123 Mass. 493. At the time when the tax in that case was assessed and accrued, the Lancaster Bank was in the hands of receivers and perpetually prohibited from transacting the business for which it was incorporated, and deprived of the right to exercise its franchise, and of the profits and benefit to be derived therefrom. As the bank had practically ceased to exist, and could no longer enjoy the privilege of transacting any business, it was held that no tax could be collected.

But a very different state of facts is presented here. The respondent was brought before the court, upon the application of the Commonwealth, to show cause why a perpetual injunction should not issue and receivers be appointed. A temporary injunction was issued pending the hearing, and at the hearing the injunction was not made perpetual, receivers were not appointed, but the bank was allowed to remain in the hands of its officers, and to be managed by them under certain restrictions. They were not allowed to receive deposits, or to pay depositors; their power to make investments was limited to certain specified securities; and, in the sale and conveyance of real estate, held by foreclosure or release of the equity of redemption, the terms of sale were subject to the approval of the bank commissioners. In all other matters the officers of the bank could do what they thought necessary for the management, care and preservation of the property, subject to the further order of the court.

It is obvious that this course was adopted for the purpose of enabling the bank to continue its business, and in the expectation that under its own officers, and in the manner pointed out, it would be relieved from its embarrassment. It was not absolutely deprived of the right to exercise its franchise, or of the profit and benefit to be derived therefrom, but it was restricted in its power to make investments, to add to its liabilities, or to diminish its assets, could sell real estate only with the approval

of the bank commissioners, and was subject to the further orders of the court.

It was in this condition on May 1, 1878, when the tax accrued under the Sts. of 1862, *c.* 224, and 1868, *c.* 315. Whether the limited and temporary injunction would be removed, or a perpetual injunction and the appointment of receivers would become necessary, was then uncertain. Until such a perpetual injunction issued, the bank was still a savings bank, in the exercise of its corporate powers under certain temporary restrictions imposed by the court. It was therefore liable to pay the tax provided in the statutes, and cannot be relieved from this obligation because afterwards the court found it necessary to issue a permanent injunction and appoint receivers to wind up its affairs. *Decree accordingly.*