## ATTORNEY GENERAL *vs.* MASSACHUSETTS PIPE LINE GAS COMPANY.

Suffolk.  December 4, 1900. — May 22, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Tax*, On corporate franchises.

A corporation having a capital stock divided into shares cannot relieve itself from liability to the franchise tax imposed by Pub. Sts. c. 13, §§ 38–40, by omitting to do business, nor by failing to file the certificate that its capital stock has been paid in, required by Pub. Sts. c. 106, § 46, before it can do business.

A gas company which has issued and received payment for the shares of capital stock authorized by its charter without obtaining the approval of the board of gas and electric light commissioners required by St. 1894, c. 450, is not a corporation "having a capital stock divided into shares" and therefore not liable to the franchise tax imposed by Pub. Sts. c. 13, §§ 38–40.  Certificates thus issued are void and the money received for them has been paid without consideration and does not constitute assets of the corporation.

INFORMATION by the Attorney General at the relation of the Treasurer of the Commonwealth under Pub. Sts. c. 13, § 54, to collect from the defendant a franchise tax assessed upon it as of May 1, 1898, amounting to $15,690 with interest thereon from December 10, 1898, filed January 25, 1900.

The case came on to be heard before *Hammond,* J., who reserved it upon the pleadings and agreed facts for the consideration of the full court.

The agreed facts were as follows : The defendant, the Massachusetts Pipe Line Gas Company was incorporated by St. 1896, c. 537, " with all the powers and privileges and subject to all the duties, restrictions and liabilities in all general laws which now are or may hereafter be in force applicable to gas companies" and subject to the provisions of Pub. Sts. c. 13, §§ 38–40, relating to the taxation of corporations organized for business purposes " having a capital stock divided into shares." The incorporators organized on July 15, 1896, and voted to fix the capital stock of the corporation at $1,000,000, divided into ten thousand shares of $100 each, and to issue these shares. In December, 1897, the shares were subscribed for and paid for in full in cash, and certificates were issued therefor by the corporation to the subscribers.

In January, 1898, the defendant filed a petition under St. 1894, c. 450, with the board of gas and electric light commissioners, asking them to approve the issue of its capital stock. The board gave a hearing upon the petition in January, 1898, at which time counsel for the defendant raised the question whether St. 1894, c. 450, applied to the defendant. The board declined to pass upon that question while the petition was before it, and the defendant decided not to go on with that hearing, and withdrew its petition on the understanding with the board that such withdrawal should not prejudice its right to file another petition at any time for the same purpose.

On February 9, 1898, the board gave a hearing to the company on the question whether they should report the corporation to the Attorney General under the provisions of St. 1885, c. 314, § 12, for violating St. 1894, c. 450, by issuing its capital stock without first obtaining the approval of the board. After that hearing the board decided to report the matter to the Attorney General, and did so report it on February 17, 1898.

The Attorney General never brought any proceedings against the defendant for issuing its capital stock without the approval of the board, but, at the request of counsel for the defendant, he heard them upon the question whether the defendant had vio-

lated St. 1894, c. 450. The hearing was public, and counsel opposed to the defendant were heard. The Attorney General was of opinion that the defendant had violated the statute, and wrote a memorandum to that effect, which he caused to be printed in his report to the Legislature in January, 1899. Some time between March 1 and March 7, 1898, the defendant offered for filing the certificate required by Pub. Sts. c. 106, § 46, that the whole amount of its capital stock had been paid in ; but the Secretary of the Commonwealth refused to receive and file the certificate on the ground that the company had not secured the approval of the board of gas and electric light commissioners to the issue of its capital stock.

On June 10, 1898, the corporation filed a second petition with the board of gas and electric light commissioners, asking the board to approve the issue of its capital stock, and on July 29, 1898, the board approved the issue. On August 1, 1898, a certificate was filed with the Secretary of the Commonwealth, setting forth the vote of the board approving the issue, as required by St. 1894, c. 450. On June 23, 1898, the corporation returned to the tax commissioner, under the oath of its treasurer, the information required by Pub. Sts. c. 13, § 38, stating, among other things, that on the first day of May, 1898, its place of business was at Boston, its capital stock was $1,000,000, the whole number of shares was ten thousand, and the par value of each share was $100 ; and also stated that "the issue of its capital stock had not nor has been approved by the board of gas and electric light commissioners."

The corporation began the transaction of business in October, 1898. It filed the certificate that the whole amount of its capital stock had been paid in, required by Pub. Sts. c. 106, § 46, on December 21, 1899. The tax commissioner assessed the tax upon the corporation after the approval of its issue of stock, in the manner and for the amount set forth in the information.

If on these facts the plaintiff was entitled to recover, judgment was to be entered on the information ; otherwise, judgment was to be entered for the defendant.

The case was argued at the bar in December, 1900, and afterwards was submitted on briefs to all the justices.

*A. W. De Goosh,* Assistant Attorney General, for the plaintiff.

*W. M. Butler & G. W. Cox,* for the defendant.

KNOWLTON, J.   The question in this case is whether the defendant was taxable under the Pub. Sts. c. 13, § 40, on May 1, 1898.   This section imposes a tax on "every corporation embraced in the provisions of section thirty-eight."   The provisions of § 38 apply to "every corporation chartered by the Commonwealth, or organized under the general laws, for purposes of business or profit, having a capital stock divided into shares." They require the treasurer "annually, between the first and the tenth day of May," to return to the tax commissioner a list of its shareholders, and a statement of various other facts which tend to show the value of its franchise.   Section 39 requires the tax commissioner to ascertain from the returns or otherwise, the true market value of the shares of each corporation included in the provisions of § 38, as a basis for an assessment.

It is conceded that the defendant corporation came within the provisions of § 38 on May 1, 1898, if it then had "a capital stock divided into shares" within the meaning of the statute. Its treasurer did not seasonably make the return required by § 39, but it is not contended that his failure to do this duty until June 23, 1898, relieves it from liability to taxation.

The defendant was incorporated by the St. 1896, c. 537, and was made subject to the laws applicable to gas companies.   In July, 1896, the corporation organized and voted to fix the capital stock at $1,000,000, and to issue the same in shares of $100 each.   In December, 1897, these shares were subscribed for, and paid for in full in cash, and certificates were issued therefor by the corporation to the subscribers.

The defendant contends that it was not liable to taxation, because on May 1, 1898, it had not filed the certificate of the payment of its capital stock into its treasury, as required by the Pub. Sts. c. 106, § 46.   This section declares that "No corporation which is subject to this chapter shall commence the transaction of the business for which it was organized or chartered until the whole amount of its capital stock has been paid in, and a certificate of that fact, . . . has been filed in the office of the secretary of the commonwealth."   About March 1, 1898, the defendant offered such a certificate for filing, but because of

irregularity in issuing capital stock without the approval of the gas commissioners, the Secretary of the Commonwealth declined to receive it, and no such certificate was filed until December 21, 1899.

It has often been held that a tax assessed upon such corporations is upon the franchise, and not upon the property of the corporation. *Portland Bank* v. *Apthorp*, 12 Mass. 252. *Attorney General* v. *Bay State Mining Co.* 99 Mass. 148. *Commonwealth* v. *People's Five Cents Savings Bank*, 5 Allen, 428. *Commonwealth* v. *Provident Institution for Savings*, 12 Allen, 312. The defendant contends that this franchise is the power to do business, and that no tax can be assessed upon any corporation which has not done all that the law requires to be done before it commences business. The position of its counsel is stated in its brief as follows: " We go so far as to say that the only logical and the only fair conclusion is that a corporation may organize, issue capital stock, file its certificate with the secretary as required by Pub. Sts. c. 106, § 46; and so long as it never transacts any business, so long it may not be liable to pay a tax on a corporate franchise." We do not agree to this extreme contention. The franchise which subjects the corporation to taxation is the right to do business legally by complying with the laws. A corporation having this right under legislative action cannot relieve itself from liability to taxation by neglecting to do business, or ceasing to do business. Its franchise remains, and it may do business when it chooses. Nor can it escape taxation by failing to comply with a statute which is intended to regulate its conduct while doing business, or before commencing business. Whatever the effect of such conditions upon the amount to be assessed, after it once has a capital stock divided into shares nothing short of the loss of the franchise as a power that may be exercised, if the corporation chooses to comply with the law, can leave it free from liability to taxation under the statute. *Commonwealth* v. *Lancaster Savings Bank*, 123 Mass. 493.

It has been decided repeatedly that if a corporation goes on in the transaction of business, in disobedience of the Pub. Sts. c. 106, § 46, before the whole amount of its capital stock is paid in, its doings are not void on that account. *Chase's Patent Ele-*

*vator Co.* v. *Boston Tow-Boat Co.* 152 Mass. 428. *First National Bank of Salem* v. *Almy,* 117 Mass. 476. *Merrick* v. *Reynolds Engine & Governor Co.* 101 Mass. 381. Certain officers are personally liable for the debts in such cases (Pub. Sts. c. 106, § 60, St. 1898, c. 266) but the contracts made in disobedience of the statute are binding. What remedy might be obtained by the Attorney. General, acting as a representative of the Commonwealth for the protection of the people, is a question which we need not consider. It follows that the failure of the defendant to file a certificate under the Pub. Sts. c. 106, § 46, did not relieve it from liability to taxation.

The next defence relied on is founded on the St. 1894, c. 450, § 1, which provides that " Gas companies and electric light companies . . . shall hereafter issue only such amounts of stock and bonds, as may from time to time, upon investigation by the board of gas and electric light commissioners be deemed and be voted by them to be reasonably requisite for the purposes for which such issue of stock or bonds has been authorized." By the St. 1896, c. 537, § 1, incorporating the defendant, it is made subject to the laws applicable to gas companies. Section 3 of this statute provides that its capital stock " shall be one million dollars, divided into ten thousand shares of the par value of one hundred dollars each," and also provides for a possible increase of it to an amount not exceeding $5,000,000. Both parties now assume, and we think rightly, that the above quoted provision from the St. 1894, c. 450, § 1, applies to this company. The formal issue of its entire capital stock and of certificates for it, was, therefore, in violation of this statute. The defendant contends that its act in issuing it was, therefore, void. The real question is as to the effect of such an act done in violation of the statute ; or, putting the question in another form, what is the meaning of the statute as applied to an attempted issue of stock by a corporation, contrary to its provisions. We are of opinion that the act is not directory, merely, but is, so to speak, jurisdictional. It prescribes the terms on which and the method by which such a corporation can issue capital stock divided into shares. As to the right of a corporation to fix the amount of its stock and to issue stock, it prescribes a prerequisite on which the right to act depends. We think that the elaborate requirements of § 1 of

this statute were intended to be fundamental, underlying the entire statutory authority of such corporations to issue stock. *Scovill* v. *Thayer,* 105 U. S. 143. The fact that the special charter of the defendant corporation fixes the capital stock at $1,000,000, with authority to increase it, does not give the corporation authority to issue any stock without a vote of the commissioners under the section just referred to. The first sentence of this section brings within its provisions all gas and electric light companies " organized under general laws or under special charters, and however authorized to issue capital stock and bonds." The amount fixed by the charter was the amount that might be issued only under the authority of the commissioners; without their authority no amount could be issued.

Under this construction of the statute the action of the corporation in fixing the capital stock was wholly void, and the certificates which were issued were void, and it follows that the money paid in by the subscribers was paid without consideration, and that it was not assets of the corporation which could be used by it in its business, and that it did not represent an issue of capital stock.

On May 1, 1898, the defendant corporation had not a capital stock divided into shares within the meaning of the statute, and it was not taxable on its franchise according to the true market value of its shares, ascertained as required by the Pub. Sts. c. 13, § 39.

*Decree for the defendant.*