BOSTON ELEVATED RAILWAY COMPANY *vs.* COMMONWEALTH.

Suffolk.    March 11, 12, 1908. — May 21, 1908.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Tax,* Excise.    *Boston Elevated Railway Company.*

In computing the amount of the excise tax which the Boston Elevated Railway Company is required to pay by St. 1907, c. 500, § 10, which, unless the annual dividend paid by the corporation in that year exceeds six per cent "shall be a sum equal to seven eighths of one per cent of the gross earnings of all the lines of elevated or surface railroads owned, leased or operated by said corporation," the "gross earnings" by which the amount of the excise tax is to be determined are those accruing from all lines of railway operated by the corporation in the prosecution of its business as a common carrier, excluding all income received from other corporate property.

PETITION, filed in the Supreme Judicial Court on March 11, 1907, by the Boston Elevated Railway Company under R. L. c. 14, § 67, as amended by St. 1906, c. 349, for the repayment of the amount of an excise tax of $3,410.03, alleged to have been assessed and exacted from the petitioner without authority of law, with interest from February 25, 1907.

The case came on to be heard before *Sheldon,* J., who, at the request of the parties, reserved it upon the petition, the answer and an agreed statement of facts for determination by the full court, such order to be entered as law and justice might require.

*T. Hunt,* for the plaintiff.

*D. Malone,* Attorney General, & *F. T. Field,* Assistant Attorney General, for the Commonwealth.

BRALEY, J.   The petitioner having paid a tax, or excise, assessed on its receipts from all sources for the last fiscal year, brings this petition for abatement under R. L. c. 14, § 67, as amended by the St. of 1906, c. 349, to recover the amount exacted on so much of the valuation, which is shown to have been in excess of the gross earnings derived solely from the operation of its lines of railway.   Its right of recovery depends on the construction to be given to the St. of 1897, c. 500, § 10, under which the tax was laid.   By the act of incorporation found in the St. of 1894, c. 548, in addition to the general taxes imposed by law on the property of street railways, the company was required by § 21 to pay a " franchise tax of not less than one per cent nor more than five per cent of the gross earnings."   It may be assumed, that, as here used for the basis of taxation, the term " gross earnings " was intended to comprise all revenue from the employment of its capital in whatever manner invested.   But the amendatory statute of 1897, c. 500, § 10, changed this provision by providing, that the company should pay " as compensation for the privileges herein granted, and for the use and occupation of the public streets, squares and places, by the lines of elevated and surface railroad owned, leased and operated by it . . . an annual sum, the amount of which shall, in each year ending the last day of September, be determined by the amount of the annual dividend paid in that year by said corporation, in the following manner: If the annual dividend paid is six per cent or less, or if no dividend is paid, the sum payable that year

shall be a sum equal to seven eighths of one per cent of the gross earnings of all the lines of elevated or surface railroads owned, leased or operated by said corporation; if said dividend exceeds six per cent then a sum equal to the excess of the dividends over six per cent in addition to said seven eighths of one per cent of said gross earnings." If it were not for the immediate context, the argument of the Attorney General, that even if the taxable percentage had been lowered unless the dividends exceeded six per cent the legislative purpose to levy the excise on the total income had undergone no change, would be decisive. But if this were all, the statute might well have stopped here, as there would have been no necessity for any different valuation than before, upon which the rate after having been ascertained should be computed. The entire language of the section, however, is to be considered, and the source from which such earnings are to be derived is plainly designated. They are expressly defined to be the whole amount received from "all the lines of elevated or surface railroads owned, leased or operated by said corporation." It is the earnings from the railway in the transportation of passengers, as distinguished from all other income incidental to the business, which are taxed. It is said, moreover, that the petitioner cannot lawfully come into possession of any revenue except as produced by the railway system which it was chartered to construct, maintain and operate. In a large sense a line of railway may be treated as the entire physical plant, including track, equipment and stations, and the earnings as consisting of all financial returns from the operation of the road. If, for illustration, a station after erection was only partially needed for the use of the road, there would seem to be no question that the company might let the unused portion, and the rentals obtained, as well as interest received on bank deposits, or from money lent, would be indirectly a product of its general business. *Brown* v. *Winnisimmet Co.* 11 Allen, 326, 333. But the authority to exact an excise rests with the Legislature, by whom alone the expediency of such taxation is to be determined. Const. Mass. c. 1, art. 4. *Commonwealth* v. *People's Five Cents Savings Bank,* 5 Allen, 428, 431. *Oliver* v. *Washington Mills,* 11 Allen, 268, 274, 275. And, even if the extent of the excise may be measured or estimated by property, its imposition is not

a taxation upon the petitioner's property, but only upon the privilege of exercising the exclusive franchise conferred by the act of incorporation. *Attorney General v. Bay State Mining Co.* 99 Mass. 148. *Connecticut Ins. Co.* v. *Commonwealth,* 133 Mass. 161, 163. St. 1894, c. 548. By limiting the charge specifically to " gross earnings " accruing, from all lines of railway operated in the prosecution of its business as a common carrier, the exclusion of all other receipts necessarily follows. *Commonwealth v. Berkshire Ins. Co.* 98 Mass. 25, 29.

Inasmuch as income received from other corporate property has been erroneously included in the assessment, the petitioner is entitled to recover back the amount overpaid, with interest.

*Decree accordingly.*