GREENFIELD SAVINGS BANK *vs.* COMMONWEALTH.

Suffolk.   December 6, 1911. — February 29, 1912.

Present: RUGG, C. J., MORTON, HAMMOND, BRALEY, & SHELDON, JJ.

*Savings Bank.   Tax,* Excise.

A savings bank is not subject to an excise tax under St. 1909, c. 490, Part III, § 21, computed upon the average amount of its deposits for a period of six months during which the bank commissioner had taken and retained possession of its property and business under authority of St. 1910, c. 399, but had not published or sent out notice for the presentation of claims against the bank in accordance with § 8 of that statute.

PETITION against the Commonwealth, filed in the Supreme Judicial Court on May 22, 1911, by the Greenfield Savings Bank, through the bank commissioner of the Commonwealth, under St. 1909, c. 490, Part III, §§ 70, 71, for the sum of $4,302.07 paid by the petitioner, which was assessed as a tax under § 21 of the same Part of the same chapter computed upon the average amount of its deposits for the six months preceding November 1, 1910.

The case came on to be heard before *Sheldon,* J., who at the request of the parties reserved it upon the petition, the answer of the Commonwealth and an agreed statement of facts for determination by the full court.

*D. Malone,* (*G. S. Fuller* with him,) for the petitioner.

*F. T. Field,* Assistant Attorney General, for the Commonwealth.

RUGG, C. J.   This is a petition under St. 1909, c. 490, Part III, §§ 70, 71, for the abatement of a tax assessed upon the petitioner under § 21 of said act, upon the average amount of its deposits for the six months preceding November 1, 1910.

The petitioner, a savings bank incorporated under the laws of this Commonwealth, was restrained in 1909 from receiving deposits and from exercising certain powers.   In June, 1910, the bank commissioner, acting under authority of St. 1910, c. 399, took, and has since retained, possession of the property and business of the petitioner because he had reason to conclude that it was in an unsound and unsafe condition and could not expe-

diently continue its business. He has not published or sent out notices in accordance with § 8 of said c. 399 requiring proof of claims against the petitioner. The question is whether a savings bank corporation is liable to the tax under these circumstances.

The tax provided by the statute is an excise tax and, speaking generally, such taxes are valid. *Commonwealth* v. *People's Five Cents Savings Bank,* 5 Allen, 428. *Provident Institution* v. *Massachusetts,* 6 Wall. 611. In *Commonwealth* v. *Lancaster Savings Bank,* 123 Mass. 493, it appeared that the bank was in the hands of receivers, perpetually prohibited from doing the business for which it was chartered and deprived of the right to exercise its franchise, and thus had practically ceased to exist, and it was held that no tax could be assessed.

In *Commonwealth* v. *Barnstable Savings Bank,* 126 Mass. 526, the bank had been enjoined from receiving deposits or paying depositors, from conveying real estate, except on terms approved by the bank commissioners, was limited in making investments to certain securities, but otherwise its officers were permitted to exercise their judgment in preserving and caring for the property of the bank, and it was held liable for the tax. The case at bar is not covered precisely by either of these decisions.

It is necessary to examine critically what it is which is made subject to the excise tax. The language of the statute, namely, that "Every savings bank . . . shall pay . . . an annual tax of one half of one per cent on the amount of its deposits" is not decisive. In *Attorney General* v. *Massachusetts Pipe Line Gas Co.* 179 Mass. 15, at page 19, it was said by Knowlton, J., in denying the claim that no tax could be assessed so long as the corporation had not done business, nor done all that the law required before it could legally commence business: "The franchise which subjects the corporation to taxation is the right to do business legally by complying with the laws. A corporation having this right under legislative action cannot relieve itself from liability to taxation by neglecting to do business, or ceasing to do business. Its franchise remains, and it may do business when it chooses." If the test here stated is applied to the facts at bar, there is no liability for the tax because the corporation cannot resume business at will. It can only do so when it is deemed safe to do so by the bank commissioner or the court. The bank commissioner, under the

terms of the statute, took possession of all the "property and business" of the bank. This description includes the franchise, for a franchise is a legal estate and not a mere naked power vested in the corporation. *Society for Savings* v. *Coite*, 6 Wall. 594, 606. The bank had nothing left in its possession except the fragmentary privileges described in §§ 13 and 14 of the act to apply to the court and to call a meeting of the incorporators, and appoint agents for liquidation. There is left to it none of the franchise rights which were decisive in *Commonwealth* v. *Barnstable Savings Bank*, 126 Mass. 526. The bank commissioner took possession of the property and business of the petitioner, not as receiver appointed by a court, but as a public officer, with many of the powers of a receiver and in most respects subject to the direction of the court to carry out a legislative policy for liquidation established as to savings banks whose depositors' interests are not being properly conserved. This policy does not necessarily contemplate a winding up of the corporate existence of every institution of which the bank commissioner may take possession. Under § 2 of said c. 399, he is to retain possession "until the bank shall resume business or until its affairs shall finally be liquidated." St. 1910, c. 622, § 11, points one way in which resumption of business might be accomplished by a scaling down of deposits. But in general the policy established by the act is that of final liquidation. In carrying out this legislative policy the bank commissioner does not avail himself of the powers conferred by the act of incorporation, as does the receiver of a public service corporation or a private corporation authorized to continue the business, but acts entirely in pursuance of the powers created by the statute. The bald existence of the corporation remains, but all its other substantial rights and privileges are in suspension. Whether these will be resumed or the corporation be extinguished is matter of doubt, although the main part of the provisions of said c. 399 look toward final liquidation.

The mere capacity to exist as a corporation is a franchise. *California* v. *Central Pacific Railroad*, 127 U. S. 1, 40. It has been said that an excise may be laid upon this even when its exercise is enjoined. *In re United States Car Co.* 15 Dick. 514. The more general rule is that there must also be either an actual exercise or a right to exercise the privileges conferred by the

State. *Flint* v. *Stone Tracy Co.* 220 U. S. 107, 145, 150. *Central Trust Co.* v. *New York City & Northern Railroad,* 110 N. Y. 250, 258. *People* v. *Tax Commissioner,* 174 N. Y. 417, 435. *People* v. *Williams,* 200 N. Y. 528. The right of doing business is the commodity which, under our excise tax cases, has been treated as the subject of the tax. *Connecticut Ins. Co.* v. *Commonwealth,* 133 Mass. 161, 165. *Attorney General* v. *Bay State Mining Co.* 99 Mass. 148, 152. *Boston Elevated Railway* v. *Commonwealth,* 199 Mass. 96. The privilege to transact business appears to have been regarded as an essential requisite to the imposition of the excise tax in *Commonwealth* v. *Lancaster Savings Bank,* 123 Mass. 493, 497. This existed to a limited extent in *Commonwealth* v. *Barnstable Savings Bank,* 126 Mass. 526.

The conclusion that there must be a right to exercise the corporate powers before liability for the tax attaches is fortified by the provisions of St. 1909, c. 490, respecting its assessment. Part III, § 22 of that act requires the bank to make a return to the tax commissioner signed and sworn to by its president and treasurer, stating the amount of its deposits on the first days of May and November, and of the average of its deposits for the six months preceding those dates, and imposes a penalty upon the bank for failure to make such return. But the books on which such return must be based have been taken over by the bank commissioner and are no longer available as of right to the officers of the bank. One of the means for collection of the tax is an action of contract, § 61, or an information by the Attorney General, on which an injunction may issue restraining the corporation from doing further business until it is paid, § 62. Neither of these remedies are available against a corporation in possession of the bank commissioner under said c. 399.

It was said by Holmes, C. J., in *City National Bank* v. *Charles Baker Co.* 180 Mass. 40, that the franchise of a corporation in the hands of a receiver was not taxed. However that may be in instances where the franchise is exercised by the receiver, as in receivership of railroads and other public service or business corporations, it applies to a savings bank, of which the bank commissioner has taken possession under said c. 399, even when no perpetual injunction has been issued against resuming its business. The tax is based solely on the value of the franchise "es-

timated by the extent to which it has used and enjoyed its corporate powers and privileges during the time for which the tax is assessed." *Commonwealth* v. *Provident Institution for Savings,* 12 Allen, 312, 315.

Such a corporation is not subject to an excise tax when it has no right nor power to exercise its franchise and when its franchise is not in fact exercised by any one in its behalf and interest, even though there is a legal possibility that its corporate functions may be resumed.

*Tax illegally exacted; decree for the petitioner with costs.,*