COMMISSIONER OF INSURANCE *vs.* COMMONWEALTH MUTUAL LIABILITY INSURANCE COMPANY.

Suffolk. May 23, 1939. — February 26, 1941.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & RONAN, JJ.

*Insurance Company. Corporation,* Taxation. *Tax,* Excise on corporation.

The excise imposed on a domestic insurance company by G. L. (Ter. Ed.) c. 63, § 22, is not on its franchise as existing over a calendar year or a portion thereof but on its franchise as it exists on a particular date not earlier than the January 1 following the calendar year.

A domestic insurance company which carried on business during a certain year until December, when receivers were appointed and it was permanently enjoined from doing so, was not subject to an excise assessed upon it after the succeeding January 1 under G. L. (Ter. Ed.) c. 63, § 22.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on December 14, 1936.

The Commonwealth appealed from a decree entered by order of *Cox,* J.

The case was submitted on briefs.

*P. A. Dever,* Attorney General, & *R. Clapp,* Assistant Attorney General, for the Commonwealth.

*H. P. Fielding* & *C. F. Lovejoy,* for the receivers of Commonwealth Mutual Liability Insurance Company.

FIELD, C.J.  By a decree of this court, sitting by a single justice, entered on December 26, 1936, the Commonwealth Mutual Liability Insurance Company was permanently enjoined from carrying on business and permanent receivers thereof were appointed.  See *Commissioner of Insurance* v. *Commonwealth Mutual Liability Ins. Co.* 297 Mass. 219. The Commonwealth filed a claim with the receivers for an excise in the amount of $8,021.22 assessed on March 11, 1937, based on premiums received by the company in the calendar year 1936.  The receivers recommended that the claim be disallowed.  By a decree of this court, sitting by a single justice, this claim was disallowed as recommended by the receivers.  The Commonwealth appealed.

The decree was right.

The excise is claimed by the Commonwealth under authority of G. L. (Ter. Ed.) c. 63, §§ 22–29, inclusive. There is no contention that the company is not a domestic insurance company within the scope of these provisions on any ground other than the fact that on December 26, 1936, it was perpetually enjoined from carrying on business. Section 25 provides that every such insurance company liable to taxation under § 22 "shall annually in January make a return" to the commissioner of corporations and taxation, setting forth, "if a domestic company, the total amount of gross premiums for all policies written or renewed, of all additional premiums charged and of all assessments made, during the preceding calendar year."  Section 28 provides that the "commissioner, from such returns, and from such other evidence as he may obtain, shall assess upon all insurance companies subject to this chapter the taxes imposed by sections twenty to twenty-three, inclusive, and shall forthwith upon making such assessment give to every such company notice of the amount thereof.  Such taxes shall become due and payable to the commissioner thirty days after the date of such notice but not later than July first."  Section 22, applicable to domestic insurance companies, provides that every such company, with an exception not here material, "shall annually pay an excise of one per cent upon the gross premiums for all policies

written or renewed, all additional premiums charged, and all assessments made by such company on policyholders during the preceding calendar year," with an exception not here material. Section 24 provides that in "determining the amount of the tax payable under sections twenty-one, twenty-two and twenty-three, there shall be deducted all premiums on policies written but not taken, or cancelled through default of payment, and all premiums returned or credited to policyholders during the year for which the tax is determined," with provisos not here material.

The excise imposed by said § 22, though occasionally referred to in the statute as a "tax," see *Eaton, Crane & Pike Co.* v. *Commonwealth,* 237 Mass. 523, 527–528, is an excise upon the right of an insurance company to carry on its business, and when an insurance company, by reason of being permanently enjoined from carrying on business, has no such right, there is no subject for the excise and none can be levied. See *Greenfield Savings Bank* v. *Commonwealth,* 211 Mass. 207, and cases cited. There is no controversy in this case as to this governing principle. The sole controversy relates to the time at which or the period during which an insurance company must have the right to carry on business in order to be liable to the excise.

It is not questioned that from January 1, 1936, until December 26, 1936, when this insurance company was permanently enjoined from carrying on business — or at least until December 16, 1936, when it was temporarily enjoined from carrying on business (see *Commonwealth* v. *Barnstable Savings Bank,* 126 Mass. 526, 530–531; *Collector of Taxes of Lakeville* v. *Bay State Street Railway,* 234 Mass. 336, 341) — this insurance company had the right to carry on business. On the other hand, it is not questioned that at least after December 26, 1936, this insurance company did not have that right. The excise claimed by the Commonwealth was assessed by the commissioner on the basis of premiums received by this insurance company — and certain other items, if any, referred to in §§ 22 and 24 — between January 1, 1936, and December 16, 1936.

The primary question for determination is whether the

subject of the excise imposed by the statute was, as contended by the Commonwealth, the right, or franchise, of the insurance company to carry on business during the period of the calendar year 1936 prior to December 16 — or December 26 — of that year, or, on the other hand, as contended by the receivers, was such right, or franchise, as it existed on January 1, 1937 — or some other date after the insurance company had been permanently enjoined from carrying on business on December 26, 1936 — at which date there was, in fact, no such right, or franchise, in existence upon which an excise could be levied.

Provisions of the statute bearing upon this question include the following: The return required to be made "annually in January" is a return of the "total amount of gross premiums for all policies written or renewed . . . during the preceding calendar year" and of other similar items for the year. § 25. The excise likewise is to be paid "annually" upon the items so described for "the preceding calendar year." § 22. The deductions to be made in determining the amount of the excise, however, relate to operations of the insurance company "during the year for which the tax is determined." § 24. Some time after January first the excise is to be assessed by the commissioner "from such returns, and from such other evidence as he may obtain," and thereupon the excise is to become due and payable. § 28.

The excise in question was first imposed by St. 1862, c. 224, entitled "An Act to levy taxes on certain insurance companies and on depositors in savings banks." This act took effect on April 30, 1862. The nature of the excise imposed by this statute — and continuations thereof — upon savings banks has been considered by this court in several cases and decisions therein made are pertinent to the present inquiry.

The excise or so called "tax" imposed by St. 1862, c. 224, upon savings banks was an excise of "one-half of one per cent. per annum on the amount of its deposits, to be assessed, one-half of said annual tax on the average amount of its deposits for the six months preceding the first day

of May and the other on the average amount of its deposits for the six months preceding the first day of November." § 4. The "tax" was to be paid "semi-annually within ten days after the first Mondays of June and December." § 5. A "tax" was assessed upon The People's Five Cents Savings Bank based on the average amount of its deposits on the first day of May, 1862, and the average amount of its deposits on the first day of November, 1862. In *Commonwealth* v. *People's Five Cents Savings Bank*, 5 Allen, 428, this so called tax was sustained as an excise, and it was held not to be retroactive by reason of the inclusion in the average amount of the deposits for the six months preceding the first day of. May of deposits during the period before the statute took effect. This court, speaking by Chief Justice Bigelow, said at pages 437–438: "The subject to be taxed was the present existing value of the franchises of these corporations — that is, the amount of benefit and advantage which the charter of each bank conferred on those who held it and enjoyed its privileges. How could this taxable capacity be more justly or accurately ascertained than by a reference to the extent of the business which it had done during a period of six months immediately preceding the time when the value of its franchise was to be ascertained for the purpose of taxation? It was fair to presume that the business of such a bank, after the passage of the act, would be as great as during the six months preceding it. This would therefore constitute a just and reasonable standard by which to measure the present value of its franchise for the purpose of assessing a tax thereon, and for this purpose only is it used. The excise is not laid on the business which each bank has transacted in the way of receiving deposits during the six months preceding June 1862 [*sic*], but upon the value of the franchise at that date; that is, its present capacity to transact business, and the amount and extent of its operations estimated by the standard of the average of deposits which it had on hand during the period immediately preceding. This is not a retroactive provision, but only a fair mode of ascertaining the existing value of a subject of

taxation." Thus the court decided that the subject of the excise was the franchise of the savings bank on a given date measured by the average amount of its deposits for a preceding period of time — ordinarily six months.

In *Commonwealth* v. *Provident Institution for Savings*, 12 Allen, 312, this court cited and relied upon the earlier case and recognized that the excise upon a savings bank was "assessed . . . on the average amount of its deposits during the six months preceding." Page 314. No question was involved as to whether the excise was based on the value of the franchise of the savings bank at a given date or, on the other hand, over a period of time. But the court, again speaking by Chief Justice Bigelow, referred to the excise imposed upon a savings bank as based "solely on the value of its franchise, estimated by the extent to which it has used and enjoyed its corporate powers and privileges during the time for which the tax is assessed." Page 315. This language conceivably might be interpreted as meaning that the subject of the excise was the right of the savings bank to carry on business during the six months' period rather than this right as it existed on a given date measured by the average deposits during the preceding period. But there is nothing in the facts of the case or in the language of the opinion showing an intention to overrule the earlier case.

Any possible doubt suggested by the language quoted from the case of the *Provident Institution for Savings* was set at rest by the later, decision of *Commonwealth* v. *Lancaster Savings Bank*, 123 Mass. 493. In that case a savings bank, on December 22, 1875, was temporarily enjoined from carrying on business, and, on December 30, 1875, the injunction was made permanent and receivers were appointed. This court held that no excise under said St. 1862, c. 224, "could be levied as of May 1, 1876," on the ground — supplemented by other grounds — that it was "very clear that as a privilege to transact business on that day it [the franchise of the savings bank] did not exist." Page 497. This decision was reached notwithstanding the fact that during a part of the preceding six months' period the savings bank was neither temporarily nor permanently enjoined from carrying

on business. In *Commonwealth* v. *Barnstable Savings Bank,* 126 Mass. 526, a like question arose with respect to a savings bank under a temporary injunction. The court said (page 530), "This case is to be distinguished from *Commonwealth* v. *Lancaster Savings Bank,* 123 Mass. 493. At the time when the tax in that case was assessed and accrued, the Lancaster Bank was in the hands of receivers and perpetually prohibited from transacting the business for which it was incorporated, and deprived of the right to exercise its franchise, and of the profits and benefit to be derived therefrom. As the bank had practically ceased to exist, and could no longer enjoy the privilege of transacting any business, it was held that no tax could be collected." The court pointed out that a different state of facts was presented in the case before the court, that the Barnstable Savings Bank "was not absolutely deprived of the right to exercise its franchise, or of the profit and benefit to be derived therefrom" (page 530), that it "was in this condition on May 1, 1878, when the tax accrued under the Sts. of 1862, c. 224, and 1868, c. 315," and that it "was therefore liable to pay the tax provided in the statutes." Page 531.

The case of *Greenfield Savings Bank* v. *Commonwealth,* 211 Mass. 207, related to an excise imposed upon savings banks under a statute that was the successor, in somewhat changed form, of the part of St. 1862, c. 224, relating to savings banks. St. 1909, c. 490, Part III, §§ 21–23. The Greenfield Savings Bank in 1909 was restrained from receiving deposits and from exercising certain powers. In June, 1910, the bank commissioner, acting under authority of St. 1910, c. 399, took and thereafter retained possession of the property and business of the bank. An excise was assessed upon the savings bank, computed upon the average amount of its deposits for the six months preceding November 1, 1910. Although for a part of this six months' period the bank commissioner was not in possession of the property and business of the savings bank, this court held, upon authority of the cases herein cited and other cases, that by reason of his having taken possession before November 1, 1910, the savings bank was not liable to the excise.

Before the decision of the *Greenfield Savings Bank* case, however, but after the facts arose upon which that case was decided, a statute was passed (St. 1911, c. 618, now G. L. [Ter. Ed.] c. 63, § 16) providing that, when a savings bank was restrained from doing business by injunction or in the hands of the bank commissioner, the excise payable by such a savings bank "as computed on the first day of May or on the first day of November next ensuing, after the bank is incapacitated from doing business as aforesaid, shall be reduced by the same proportion which the number of business days during the six months next preceding the said first day of May or the said first day of November on which the bank was thus incapacitated bears to the total number of business days in the said six months," and thereafter the bank was to be relieved from paying the excise as long as it continued to be so incapacitated.

The case of *Springdale Finishing Co.* v. *Commonwealth*, 242 Mass. 37, involved an excise tax on a domestic corporation under St. 1919, c. 355, as amended (see G. L. c. 63), "with respect to the carrying on or doing of business by it." The excise imposed by the statute upon such a corporation, to be paid annually, was the sum of an "amount equal to five dollars per thousand upon the value of its corporate excess" on the first day of April, and an amount equal to two and one half per cent of the net income for its last taxable, or fiscal, year. Each corporation was required to make a return annually as of April first within ten days thereafter. St. 1919, c. 355, §§ 1, 2, 3, 4. See G. L. c. 63, §§ 30, 32, 35, 44. And afterwards the tax commissioner was to assess the excise. The taxable year of the Springdale Finishing Company was coterminous with the calendar year. On July 29, 1920, it conveyed all its assets and business to a foreign corporation without having given the tax commissioner the five days' previous notice required by statute. See St. 1910, c. 187, § 1, as amended by St. 1919, c. 349, § 19; G. L. c. 63, § 76. That statute provided that, whenever a corporation subject thereto "shall make such a sale or transfer, the tax . . . shall become due and payable at the time when the commissioner is so notified, or, if he is

not so notified, at the time when he should have been notified." The court held that an excise "rightly was levied as of July 24, 1920." Page 42. The ground of this decision was that the excise "was levied in respect to the doing of business during the calendar year beginning with January 1, 1920. This part of the excise is levied for a period of time that is past and not for a period in the future. The effect of the statute was to impose an excise for the commodity of carrying on business by a domestic corporation for a less period than one year in cases where such business was not carried on for an entire year. That this was the purpose of the General Court is manifest from the present phrase of the law in G. L. c. 63, § 30, cl. 6," where the definition of "taxable year" contains a reference to fractional periods. The court apparently relied, to some extent at least, on the fact that the excise was in part based upon "income" which "naturally imports duration of time for its measurement." Page 41. The court, however, distinguished the excise under consideration from excises imposed as of a given date, saying that for "many years the corporate excise tax was levied upon domestic corporations with respect to their corporate excess on a day certain. *Martin L. Hall Co.* v. *Commonwealth*, 215 Mass. 326. If there was no corporate excess on that date for any reason, no excise was due even though the commodity of carrying on business had been exercised during a considerable fraction of the preceding tax year. *Commonwealth* v. *Lancaster Savings Bank*, 123 Mass. 493." Page 41. This case, therefore, recognizes that the excise on savings banks — apart, at least, from the effect of St. 1911, c. 618, now G. L. (Ter. Ed.) c. 63, § 16 — was imposed upon the franchise of the savings bank — its right to carry on business — as it existed on a given date and not as it existed over a period of time. The result of the *Springdale Finishing Co.* case would not necessarily have been different if the excise then in question had been imposed as of a given date, for the effect of St. 1910, c. 187, § 1, as amended, was to accelerate the date as of which the excise could be levied and, on the date as of which it was levied under this statute, the franchise of the corporation — its right to carry on business

— was still in existence. The corporation was not prohibited from exercising its franchise after that date, and, in fact, did exercise it. Page 42. And see *Attorney General* v. *Massachusetts Pipe Line Gas Co.* 179 Mass. 15, 19.

The reference in *Provident Institution for Savings* v. *Commonwealth*, 259 Mass. 124, 126, to "the tax due from the petitioner [a savings bank] on account of the six months' period ending November 1, 1926," cannot rightly be interpreted as importing that the right to carry on business during this period was the subject of the excise, contrary to the previous decisions, rather than that the average deposits during this period furnished the measure of the value of the excise.

In the light of the decisions above considered it must be taken as settled — apart, at least, from the effect of St. 1911, c. 618, now G. L. (Ter. Ed.) c. 63, § 16 — that the excise imposed upon savings banks by St. 1862, c. 224, and later statutes continuing that statute with changes in detail (see now G. L. [Ter. Ed.] c. 63, §§ 11–13) was imposed upon the franchise of a savings bank — its right to carry on business — as it existed on a given date — May first or November first — with its value measured by the average deposits of the savings bank during a preceding period ordinarily of six months, and not upon such franchise enjoyed by the savings bank during such preceding period.

We are of the opinion that the cases involving the excise upon savings banks are decisive as to the subject of the excise imposed upon domestic insurance companies by said St. 1862, c. 224, and later statutes continuing that statute with changes in detail. See G. L. (Ter. Ed.) c. 63, §§ 22–29. (No question with respect to this excise arises as to the effect of G. L. [Ter. Ed.] c. 63, § 16. That statute does not apply expressly to insurance companies and cannot be extended to them by implication. And there is no similar statute applicable to insurance companies.) The excise upon savings banks and that upon domestic insurance companies were first imposed by the same statute, St. 1862, c. 224, the former by §§ 4, 8 and 12 thereof, the latter by §§ 1 and 6 thereof. Certain sections relating to returns,

and to payment and collection of the excise, were common to both classes of corporations. See §§ 5, 9 and 11. Corporations of each class were to make returns semiannually and to pay the excise semiannually. The only substantial difference in the treatment of the two classes of corporations was in the bases for computation of the excise — a difference required by the difference in the nature of the business carried on by the different classes of corporations. The natural inference from a statute in this form is that the Legislature intended to deal with the two classes of corporations upon the same fundamental principle so far as it could be applied to corporations carrying on materially different kinds of business. The language of this court in describing the nature of the excise upon savings banks in *Commonwealth* v. *People's Five Cents Savings Bank,* 5 Allen, 428, 437–438, already quoted, was fully applicable to the nature of the excise imposed upon insurance companies by the same statute, with the substitution of the words "insurance company" for the word "bank" and the word "premiums" (understood to include related items) for the word "deposits" or the words "average of deposits." The opinion in that case as so changed would state, in part, that the "subject to be taxed was the present existing value of the franchise of this corporation — that is, the amount of benefit and advantage which the charter of each insurance company conferred on those who held it and enjoyed its privileges. . . . The excise is not laid on the business which each insurance company has transacted . . . during the six months preceding June [May] . . . but upon the value of the franchise at that date." The fact that the measure of such value was premiums rather than deposits did not show an intention that the subject of the excise should be different. Doubtless premiums received resemble income more closely than do deposits. But this fact is insufficient to show an intention to impose an excise upon insurance companies fundamentally different in nature from that imposed by the same statute upon savings banks. This is true notwithstanding the force attributed by the case of *Springdale Finishing Co.* v. *Commonwealth,* 242 Mass. 37, to the use

of the word "income" in the statute imposing a general corporate excess tax.  And the statutes subsequent to St. 1862, c. 224, relating to the excise imposed upon domestic insurance companies (including those making the excise payable annually instead of semiannually, see St. 1873, c. 141; G. L. [Ter. Ed.] c. 63, §§ 22, 28) disclose no intention to change the fundamental nature of the excise with respect to the subject upon which it is imposed.  The phrase in § 24 of the present statute (G. L. [Ter. Ed.] c. 63) relating to deductions referring to "the year for which the tax is determined" refers to the period that provides the measure of the excise as did the phrase "the time for which the tax is assessed" in the opinion in the case of *Commonwealth* v. *Provident Institution for Savings*, 12 Allen, 312, 315.  We conclude, therefore, that the statutes imposing an excise upon domestic insurance companies must be construed as imposing such an excise upon the franchise of such a company as existing at a given date rather than as existing over a period of time.

The question as to the relative fairness or soundness of taxation policy of an excise imposed upon a franchise as existing on a given date, and of such an excise imposed upon a franchise as enjoyed over a period of time, is a matter for the Legislature and not for the courts so long as constitutional rights are not infringed.  Doubtless arguments may be advanced on each side of the question.  See *Commonwealth* v. *People's Five Cents Savings Bank*, 5 Allen, 428, 437–438; *Springdale Finishing Co.* v. *Commonwealth*, 242 Mass. 37.  There is, however, no such clear objection on these grounds to the natural interpretation of the statute under consideration, in the light of its history, as to require a departure therefrom.  And cases in other jurisdictions furnish little assistance in interpreting the statute.

The date as of which the excise based upon premiums and related items received by the Commonwealth Mutual Liability Insurance Company was to be levied was not earlier than January 1, 1937, when "the preceding calendar year," for which by the terms of the statute a return of such premiums and related items was to be made, had fully

expired. See G. L. (Ter. Ed.) c. 63, § 25; *Commonwealth v. Lancaster Savings Bank*, 123 Mass. 493, 497. On that date this insurance company, by reason of the permanent injunction of December 26, 1936, had no franchise, considered as a right to carry on business, that was the subject of an excise. No excise could be levied as of that date under the governing statute as we construe it. See *Commonwealth v. Lancaster Savings Bank*, 123 Mass. 493, 497; *Greenfield Savings Bank v. Commonwealth*, 211 Mass. 207, 211. Consequently the Commonwealth is not entitled to the excise claimed.

Whether this conclusion could be reached on other grounds need not be considered. See *Commonwealth v. Lancaster Savings Bank*, 123 Mass. 493, 497; *Greenfield Savings Bank v. Commonwealth*, 211 Mass. 207, 210. Nor need the effect of a permanent injunction and the appointment of receivers after January 1, 1937, be considered.

*Decree affirmed.*