MARY C. WHEELER SCHOOL, INC. *vs.* BOARD OF ASSESSORS OF SEEKONK.

Suffolk. April 7, 1975. — July 14, 1975.

Present: TAURO, C.J., BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Taxation,* Real estate tax: exemption. *Constitutional Law,* Taxation, Equal protection of laws. *Charity. Corporation,* Charitable corporation.

A foreign charitable corporation owning property in Massachusetts which was denied an exemption from local taxation under G. L. c. 59, § 5, Third, solely by reason of the stated limitation on the exemption to charitable organizations "incorporated in the Commonwealth" was not accorded the equal protection of the laws guaranteed by the Fourteenth Amendment to the Federal Constitution and was entitled to an abatement [345-353]; the statutory scheme governing foreign charitable corporations in Massachusetts was not so far different from that governing domestic charitable corporations as to provide constitutional validity to the statutory distinction [353-354].

368 Mass. 344                                               345

Mary C. Wheeler School, Inc. v. Board of Assessors of Seekonk.

APPEAL from a decision of the Appellate Tax Board.

*Jonathan E. Cole* of Rhode Island (*Kinnaird Howland* with him) for the taxpayer.

*Max Volterra* for the Board of Assessors of Seekonk.

KAPLAN, J. Mary C. Wheeler School, Inc. (School), is organized under Rhode Island law as a "non-business corporation." It runs a day and boarding school for children from nursery school through secondary school age. The School's main campus is in Providence, Rhode Island, but it also owns a 122-acre tract of open and wooded land in Seekonk, Massachusetts, a few miles away, which it uses primarily for recreation and sports and as an "open classroom" for science and ecology courses.

The board of assessors of Seekonk (assessors) assessed the School $4,055.84 in real estate taxes on the Seekonk property for 1972. In doing so, the assessors followed G. L. c. 59, § 5, Third, which grants tax exemption to the property of a "literary, benevolent, charitable or scientific institution or temperance society" only if it is "incorporated in the Commonwealth." The School filed an application for an abatement of the tax with the assessors; following denial it paid $962.40, the amount necessary to preserve its right to appeal,[1] and petitioned the Appellate Tax Board (Board) for tax exemption, claiming that the distinction on which tax exemption was made to turn — State of incorporation — violated the Fourteenth Amendment guaranty of equal protection of the laws. The formal procedure was followed before the

---

[1] Under G. L. c. 59, § 64 (as in effect for taxes levied for periods prior to January 1, 1973), a party seeking to appeal the refusal of assessors to abate a tax of over $1,000 on real estate was required as a condition of appeal to pay "a sum not less than the amount which would be assessable in the year of assessment of the tax upon a valuation equal to the average of the valuations . . . as reduced by reason of abatements, if any, for the three years next preceding said year . . . ." (By St. 1973, c. 664, the amount of tax necessary to trigger the partial payment requirement was raised to $1,500.)

Board; a hearing was held and on May 24, 1974, the School's petition was denied,[2] the Board subsequently making findings of fact and a report. The School took the present appeal to this court. We reverse the Board.

As the parties are agreed that the School satisfies all the requirements for tax exemption other than State of incorporation,[3] the issue is just that posed in the petition to the Board: was the distinction between foreign and domestic incorporation a valid one for the classification of the property of charitable institutions into taxable and tax exempt classes in this State.

"[T]he Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan* v. *Maryland,* 366 U. S. 420, 425-426 (1961). A State's "scope of discretion" is especially "wide" when the subject involved is taxation. See *State Bd. of Tax Commrs. of Ind.* v. *Jackson,* 283 U. S. 527, 537-538 (1931) (permissible to distinguish be-

---

[2] The Board at the same time denied the School's petition for an abatement of its 1973 taxes in the same amount which had been consolidated with the 1972 petition. To bring that appeal, the School had to pay $1,993.55 of tax. See n. 1 above. The two cases were also consolidated in this court, and as they are legally and factually similar, we treat them together.

[3] It is agreed that the School is a charitable institution; is using the Seekonk land for its charitable purposes; does not distribute income among its stockholders or trustees; and has supplied the assessors and the Division of Public Charities in the Department of the Attorney General with the required lists and reports under G. L. c. 12, § 8F, and c. 59, § 29. See c. 59, § 5, Third (a), (b), and pp. 352-353, *infra.*

tween chain stores and independent stores in imposing annual license tax); *Commonwealth* v. *Life Assur. Co.* 419 Pa. 370 (1965) (permissible to distinguish between life and other insurance companies for purpose of tax on gross premiums). Our own cases reflect the breadth of discretion available to the Legislature in tax classifications. Thus, in the recent case of *Frost* v. *Commissioner of Corps. & Taxn.* 363 Mass. 235 (1973), app. dism. for want of a substantial Federal question, 414 U. S. 803 (1973), the court upheld G. L. c. 65A, § 1, which imposed estate taxes on intangible personal property in the Commonwealth owned by residents of foreign countries but not on such property owned by residents of other States: the fact that the Federal estate tax credit was available for taxes paid to the States, but not for taxes paid to foreign countries, provided a basis for distinction between the two classes of cases. See *Cabot* v. *Assessors of Boston*, 335 Mass. 53 (1956) (permissible to exempt Boston Common garage from taxation while taxing other parking garages); *Weinstock* v. *Hull*, 367 Mass. 66 (1975) (permissible to distinguish for purpose of tax exemption between household furniture and effects used in a dwelling which is place of domicil and such property used elsewhere).

But if the State legislative power in the field of taxation is extensive, there are yet limits to it, and courts have found the limits exceeded when the distinction drawn is one which favors State residents — individual or corporate — over nonresidents. *Hanover Fire Ins. Co.* v. *Harding*, 272 U. S. 494 (1926), struck down as violative of the equal protection clause a tax on net receipts of insurance companies that applied only to out-of-State companies. Again, in *Wheeling Steel Corp.* v. *Glander*, 337 U. S. 562 (1949), a State tax imposed on only those intangibles in Ohio owned by foreign corporations was declared invalid. The court held that, "[u]nder long-settled principles of our Federation, Ohio was not required to admit these foreign corporations to

348                                    368 Mass. 344

Mary C. Wheeler School, Inc. *v.* Board of Assessors of Seekonk.

carry on intrastate business within its borders. The State
may arbitrarily exclude them or may license them upon
any terms it sees fit, apart from exacting surrender of
rights derived from the Constitution . . .. Ohio elected,
however, to admit these corporations . . .. After a state
had chosen to domesticate foreign corporations, the
adopted corporations are entitled to equal protection with
the state's own corporate progeny, at least to the extent
that their property is entitled to an equally favorable *ad
valorem* tax basis." 337 U. S. at 571-572. The court
rejected as a possible justification for the tax the implicit
invitation extended by Ohio to other States to impose
reciprocal taxes on Ohio corporations; the court noted
that no other State had enacted such a tax in response.
See also *Reserve Life Ins. Co.* v. *Bowers,* 380 U. S. 258
(1965), reversing mem. 175 Ohio St. 468 (1964),
affirming mem. 119 Ohio App. 251 (1963) (not permis-
sible to tax personal property of foreign but not domestic
insurance companies); *Haman* v. *County of Humboldt,*
8 Cal. 3d 922 (1973) (not permissible to impose higher
property tax on boats registered out of State than on
those registered in State); *Borden* v. *Selden,* 259 Iowa
808 (1966) (not permissible to grant agricultural land tax
credit only to residents); *Cleveland-Cliffs Iron Co.* v.
*Department of Rev.* 329 Mich. 225 (1950) (not permis-
sible to exempt domestic but not foreign corporations
from taxation of intangible property located in and taxed
by another State).

If the contrast between the normal reluctance of courts
to invalidate classifications in tax statutes, and their
readiness to do so in cases involving classifications that
disfavor nonresidents, seems somewhat jarring, the
explanation for it is plainly stated in the concurring
opinion of Mr. Justice Brennan, joined by Mr. Justice
Harlan, in *Allied Stores of Ohio, Inc.* v. *Bowers,* 358
U. S. 522, 530 (1959). Agreeing with the court on the
validity of a tax classification that favored nonresidents
by exempting from taxation their property held in

368 Mass. 344                                        349

Mary C. Wheeler School, Inc. *v.* Board of Assessors of Seekonk.

warehouses in Ohio, the opinion addressed itself to the problem of reconciling that result with *Wheeling Steel Corp.* v. *Glander,* 337 U. S. 562 (1949): "*Wheeling* teaches that a distinction which burdens the property of nonresidents but not like property of residents is . . . [unconstitutional]. But this is not because no rational ground can be conceived for . . . [the] classification . . .: could not such a ground be found in the State's . . . desire to favor its own residents . . .? The proper analysis, it seems to me, is that *Wheeling* applied the Equal Protection Clause to give effect to its role to protect our federalism by denying Ohio the power constitutionally to discriminate in favor of its own residents . . .. On the other hand, in the present case, Ohio's classification based on residence operates *against* Ohio residents and clearly presents no state action disruptive of the federal pattern. There is, therefore, no reason to judge the state action mechanically by the same principles as state efforts to favor residents." 358 U. S. at 533. The theme that courts must be vigilant to protect the functioning of federalism was repeated in *Austin* v. *New Hampshire,* 420 U. S. 656 (1975). That case voided a State income tax that applied to non-residents but not to residents, saying that "[i]n resolving constitutional challenges to state tax measures this Court has made it clear that 'in taxation, even more than in other fields, legislatures possess the greatest freedom in classification.' *Madden* v. *Kentucky,* 309 U. S. 83, 88 (1940). . . . Our review of tax classifications has generally been concomitantly narrow . . .." However, said the court, "Since nonresidents are not represented in the taxing State's legislative halls, cf. *Allied Stores of Ohio, Inc.* v. *Bowers,* 358 U. S. 522, 532-533 (1959) (Brennan, J., concurring), judicial acquiescence in taxation schemes that burden them particularly would remit them to such redress as they could secure through their own State; but 'to prevent [retaliation] was one of the chief ends sought to be accomplished by the adoption of the Con-

stitution.' *Travis* v. *Yale & Towne Mfg. Co.* 252 U. S. 60, 82 (1920)." 420 U. S. at 661-663.[4]

With this background we may turn to a central Supreme Court case on State tax exemptions for charitable corporations. In *WHYY, Inc.* v. *Borough of Glassboro,* 393 U. S. 117 (1968) (per curiam), the Supreme Court invalidated a New Jersey statute, N. J. Sts. Anno. § 54:4-3.6, which denied to charitable corporations incorporated in other States the exemption from real and personal property tax granted to such corporations incorporated in New Jersey. New Jersey permitted foreign charitable corporations to register and qualify to do business in the State in the same manner as noncharitable foreign corporations, N. J. Sts. Anno. § 14:15-2, and the charitable corporation had done so. The court quoted the *Wheeling Steel* opinion to the effect that once a State has permitted a foreign corporation to enter and do business within its borders, it cannot discriminate against it in property taxation. 393 U. S. at 119. Further, the court rejected the claim that a justification for the distinction could be found in the need or desire to avoid the burden of examining the laws of other States to see if their nonprofit corporations would satisfy New Jersey requirements for like corporations: "But this burden would exist only if a foreign corporation sought exemption in New Jersey on the basis of its nonprofit status at home. It is one thing for a State to avoid this extra burden by refusing to grant such an automatic exemption. It is quite another to deny a

---

[4] Because *Austin* involved individuals, it was decided under the privileges and immunities clause of the Constitution. It is because that clause does not apply to corporations, *Arizona Commercial Mining Co.* v. *Iron Cap Copper Co.* 236 Mass. 185, 194 (1920); *Hague* v. *Committee for Industrial Organization,* 307 U. S. 496, 514 (1939); *Asbury Hosp.* v. *Cass County,* 326 U. S. 207, 210-211 (1945), that the equal protection clause, which does so apply, *Louis K. Liggett Co.* v. *Lee,* 288 U. S. 517 (1933), has been used to carry out the same policy in the cases involving corporate taxation.

foreign corporation an opportunity equivalent to that of a domestic corporation to demonstrate that it meets the requirements for a nonprofit corporation under local law.[5] Neither the New Jersey Supreme Court nor the appellees have suggested that there is any greater administrative burden in evaluating a foreign than a domestic corporation under New Jersey law. We must therefore conclude, as we did in *Wheeling,* that the appellant has not been 'accorded equal treatment, and the inequality is not because of the slightest difference in [New Jersey's] relation to the decisive transaction, but solely because of the different residence of the owner.' 337 U. S., at 572." 393 U. S. at 120.[6]

The *WHYY* case would be immediately determinative of ours[7] but for one fact: under Massachusetts law as it stood at the time of the taxes in question, foreign charitable corporations could not register to operate in the Commonwealth in the usual way that foreign

---

[5] We believe it is equally true in the case at bar that whether an out-of-State corporation is "charitable" within G. L. c. 59, § 5, Third, is to be determined by Massachusetts law.

[6] *WHYY* was followed in *American Youth Foundation* v. *Benona Twp.* 37 Mich. App. 722 (1972), leave to appeal den. 387 Mich. 782 (1972) (charitable corporation incorporated outside of State must be accorded same tax exemption as one incorporated in State). See also Fisch, Freed, and Schachter, Charities and Charitable Foundations, § 796 (1974).

[7] *WHYY* left open the possibility that the denial of an exemption could be justified by the taxing State's desire to give exemptions only where the charity benefited its own residents, citing *Board of Educ. of the Ky. Annual Conference of the Methodist Episcopal Church* v. *Illinois,* 203 U. S. 553 (1906). But that rationale is not available to sustain the Massachusetts statute, since our decisions make clear that tax exemption of Massachusetts charitable corporations does not depend on benefit to Massachusetts residents. *Assessors of Boston* v. *World Wide Bdcst. Foundation of Mass. Inc.* 317 Mass. 598 (1945). *Old Colony Trust Co.* v. *Commissioner of Corps. & Taxn.* 331 Mass. 329, 339 (1954). *Staman* v. *Assessors of Chatham,* 351 Mass. 479 (1966). See Scott, Trusts, § 374.8 (3d ed. 1967) (trust is charitable though the community benefited is outside of the trust's State of creation).

profitmaking corporations could.[8]   (A new statute governing foreign corporations enacted in 1973 now permits such registration.[9])   The question is therefore raised whether the statutory scheme governing foreign charitable corporations in Massachusetts at the time the taxes here disputed were imposed was so far different from that which governed Massachusetts charitable corporations, that *WHYY* can be distinguished and the denial of tax exempt status upheld.

The Board offered as a possible reason for the denial of the exemption "that Massachusetts would not have control over the regulation of these foreign corporations in the sensitive area of charitable exemptions.   Massachusetts could not revoke the charter of the foreign corporation if it violated its public trust."   However, G. L. c. 12, §§ 8-8J, has for many years constituted a comprehensive system for the regulation of charitable organizations in the Commonwealth.   See, e.g., *Attorney Gen.* v. *Bedard,* 218 Mass. 378, 385 (1914); *In the Matter of Troy,* 364 Mass. 15, 56-57 (1973).   Under it, the Attorney General "shall enforce the due application of funds given . . . to public charities within the commonwealth, and prevent breaches of trust in the administration thereof."   § 8.   To that end, all charitable organizations, foreign and domestic, must annually file with the Division of Public Charities the following information:  besides the name and address of the organization, the names and addresses of its officers and the members of its principal governing board, the statute under which it was incorporated, a statement as to whether it has ever been enjoined from soliciting contributions, the values of its endowment and other funds and property, its income and expenditures for the previous year, itemized, its costs of solicitation, admini-

---

[8] See G. L. c. 181, § 1 (as in effect before January 1, 1974).

[9] See G. L. c. 181, § 1.

stration, and public information programs, and the funds or properties it transferred out of the Commonwealth, with the recipient and the purpose of the transfer explained. § 8F. In addition, the division may, with the approval of a judge of the Probate Court or a Justice of the Supreme Judicial Court, examine the books and records and investigate the administration of any charity. § 8H. Domestic charities are required to file with the division copies of their charters and by-laws; the Attorney General may compel a delinquent to file by securing an injunction. § 8J. Similarly, charities incorporated in other States must file with the division copies of their charters and by-laws as prerequisites to engaging in charitable work or raising funds in the Commonwealth; if a foreign charity does not file, its officers are subject to fine, and the charity may be enjoined from operating while the violation continues. § 8E.

The above scheme permits foreign charities to operate in Massachusetts, and subjects them to supervision and control substantially similar to that imposed on domestic corporations; we do not think the inability to revoke the charter of the foreign charity significant in view of the broad power given the Attorney General under § 8 to "enforce the due application of funds given . . . to public charities within the commonwealth, and prevent breaches of trust in the administration thereof." [10]

---

[10] The scope of the regulation and control of foreign charitable corporations provided by §§ 8-8J is demonstrated by the fact that the only additional reporting that is required for a foreign charitable corporation registering to operate in the Commonwealth under the new G. L. c. 181, as adopted in 1973, is a description of its activities in the Commonwealth, the location of its local office, its fiscal year, and the date of its organization, and the only other significant consequences are the appointment of a resident agent for service of process, and the imposition of liability on directors and officers for signing statements which they knew or had reason to know to be false in a material matter, if they did not act in good faith as a prudent man would.

Accordingly, we believe *WHYY* controls; Massachusetts has "permitted . . . [foreign charitable corporations] to enter," 393 U. S. at 119, including the appellant School, and in the circumstances before us we must conclude that the School "has not been 'accorded equal treatment . . . solely because of the different residence of the owner.' [*Wheeling Steel Corp.* v. *Glander*] 337 U. S., at 572." 393 U. S. at 120.

The decision of the Appellate Tax Board is reversed, and abatements are to be granted in accordance with this opinion with interest on the taxes paid.

*So ordered.*