FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF BOSTON & others[1] *vs.* STATE TAX COMMISSION & another.[2]

Suffolk.    November 4, 1976. — May 3, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & LIACOS, JJ.

*Statute,* Construction.  *Federal Savings and Loan Association.  Taxation,* Federal savings and loan association.  *Constitutional Law,* Taxation, Interstate commerce.  *Words,* "Operating expenses."

Dividends or interest paid to members of savings and loan associations are not "operating expenses" within the meaning of G. L. c. 63, § 11. [482-485]

---

[1] The other plaintiffs are: Boston Federal Savings and Loan Association; Colonial Federal Savings and Loan Association; Security Federal Savings and Loan Association of Brockton; Second Federal Savings and Loan Association; Freedom Federal Savings and Loan Association (formerly First Federal Savings and Loan Association of Worcester); Union Federal Savings and Loan Association of Boston; Metropolitan Federal Savings and Loan Association (merged into Metropolitan Savings Bank which in turn merged into Union Warren Savings Bank); Bay State Federal Savings and Loan Association; First Federal Savings and Loan Association of Fall River; First Federal Savings and Loan Association of Cape Cod; First Federal Savings and Loan Association of Lowell; Family Federal Savings and Loan Association (formerly Fitchburg Federal Savings and Loan Association); Natick Federal Savings and Loan Association; Union Federal Savings and Loan Association; Plymouth Federal Savings and Loan Association; Revere Federal Savings and Loan Association; Middlesex Federal Savings and Loan Association; Winter Hill Federal Savings and Loan Association; Waltham Federal Savings and Loan Association; Mutual Federal Savings and Loan Association of Whitman; First Federal Savings and Loan Association of Attleboro; Edward Everett Federal Savings and Loan Association; Scituate Federal Savings and Loan Association; Milford Federal Savings and Loan Association; Monument Federal Savings and

First Federal Sav. & Loan Ass'n of Boston *v.* State Tax Commission.

General Laws c. 63, § 11, is a franchise tax and, as such, is authorized by Congress under 12 U.S.C. § 1464 (h) (1970). [485-488]

In a challenge by savings and loan associations to the tax imposed on them by G. L. c. 63, § 11, the plaintiffs failed to meet their burden of establishing § 11 improperly imposed on interstate commerce where the record was devoid of any information with respect to the contacts and activities of any of the associations in any other jurisdiction. [488-489]

Despite the fact that the net operating income of Federal savings and loan associations tends to be greater than that of other similar institutions because of the deductions available for reserve funds, the tax imposed by G. L. c. 63, § 11, on net operating income does not violate 12 U.S.C. § 1464 (h) (1970) [489-490]; nor does the operation of § 11 constitute a denial of due process or equal protection of the laws; nor does it violate arts. 23 and 30 of the Declaration of Rights of the Massachusetts Constitution or art. 44 of the Amendments to the Massachusetts Constitution [490-491].

The tax imposed by G. L. c. 63, § 11, on Federal savings and loan associations did not violate 12 U.S.C. § 1464 (h) (1970) by the fact that it did not apply to credit unions. [491-494]

CIVIL ACTION commenced in the Superior Court on April 16, 1975.

The case was reserved and reported by *Hallisey*, J., to the Appeals Court. The Supreme Judicial Court granted a request for direct review.

*Chester M. Howe* for the plaintiffs.

*Howard Whitehead*, Assistant Attorney General, for the defendants.

WILKINS, J.  The plaintiffs are all the Federally chartered savings and loan associations (associations) in the Commonwealth. They seek a declaratory judgment concerning various aspects of the excise which they are re-

Loan Association; Leader Federal Savings and Loan Association; Foxboro Federal Savings and Loan Association; People's Federal Savings and Loan Association; Bay Colony Federal Savings and Loan Association; Montello Federal Savings and Loan Association of Brockton (merged into Home Federal Savings and Loan Association); Home Federal Savings and Loan Association; Home Owners Federal Savings and Loan Association; and Northeast Federal Savings and Loan Association (merged into First Federal Savings and Loan Association of Worcester, now named Freedom Federal Savings and Loan Association).

2 The Commissioner of Corporations. and Taxation is also a named defendant.

quired to pay pursuant to G. L. c. 63, § 11 (*a*) (1), and § 11 (*b*) (1), the significant portions of which are set forth in the margin.[3]

The associations argue that the defendant Commissioner of Corporations and Taxation (Commissioner) has misconstrued G. L. c. 63, § 11, by disallowing interest or dividends paid to members as a deduction in arriving at net operating income subject to the excise. They also challenge the excise in its entirety on several grounds, relying on constitutional arguments and on claims that the imposition of the excise is not authorized by Congress. The associations and the defendants moved for summary judgment. A judge of the Superior Court reserved and reported the case on a record which consists of the pleadings, a stipulation of facts, and an affidavit in support of the associations' motion for summary judgment. We granted the associations' request for direct appellate review. We conclude that none of the associations' arguments has merit.

Since 1966, when the income-based portion of the excise was added to the law (St. 1966, c. 14, § 11), the associations have been challenging the application to them of

---

[3] General Laws c. 63, § 11 (*a*) (1), § 11 (*b*) (1), and a certain definition, as appearing in St. 1975, c. 684, § 44, read as follows: *"Section 11.* Every savings bank as defined in chapter one hundred and sixty-eight, every co-operative bank as defined in chapter one hundred and seventy and every state or federal savings and loan association located in the commonwealth shall pay to the commissioner an annual excise equal to the following: (*a*) on or before the twenty-fifth day of the seventh month of the taxable year, there shall be paid (1) six hundred twenty-seven one thousandths per cent of a reasonable estimate of its net operating income, as hereinafter defined, for the taxable year, ... (*b*) on or before the twenty-fifth day of the first month following the close of the taxable year, there shall be paid (1) one and two hundred fifty-four one thousandths per cent of its net operating income, as hereinafter defined, for the taxable year, less the estimated amount previously paid with respect to such income, ....

"For the purpose of this section, 'net operating income' shall mean gross income from all sources, without exclusion, for the taxable year, less (*i*) operating expenses, (*ii*) net losses upon assets sold, exchanged or charged off as uncollectible during the taxable year, and (*iii*) minimum additions during the taxable years to its guaranty fund or surplus required by law or the appropriate federal and state supervisory authorities ...."

the income-based portion of the excise. Applications for abatement have been filed by the associations for the years 1966 to 1974, inclusive; those applications have been denied by the defendant State Tax Commission (commission); and petitions under the formal procedure have been filed with the Appellate Tax Board.[4]

For an understanding of the background of this case, we should note Federal court proceedings which also dealt with the excise imposed on the associations by G. L. c. 63, § 11. In 1970, the United States filed a complaint in the United States District Court, District of Massachusetts, challenging the application of that portion of the excise which was based on the deposits of Federal savings and loan associations. Six of the plaintiff associations intervened in that action. The District Court concluded that the provisions of G. L. c. 63, § 11 (*a*) (2) (*ii*), and (*b*) (2) (*ii*), resulted in an illegal disparity of tax treatment between Federal savings and loan associations and local savings institutions. *United States* v. *State Tax Comm'n*, 348 F. Supp. 397, 400 (D. Mass. 1972). The Court of Appeals agreed but vacated and modified the judgment in a respect not involving the District Court's central conclusion. *United States* v. *State Tax Comm'n*, 481 F.2d 963, 970-971 (1st Cir. 1973). The issues involved in that case are not before us here. As the result of the Federal litigation, the associations are exempt from the deposits-based aspect of the excise provided in G. L. c. 63, § 11, and those associations which filed timely applications for abatement have received refunds of all payments of that portion of the excise.

In conjunction with the action commenced by the United States, the six associations which intervened in that action filed another action challenging the income-based aspect of the excise on several grounds. Certain of the issues raised here by the associations were presented

---

[4] Certain of the associations have not filed timely applications for abatement for all years, but that circumstance is not crucial to our resolution of the issues presented in this case.

to the District Court and, as indicated subsequently in this opinion, were rejected. *United States* v. *State Tax Comm'n,* 348 F. Supp. at 400-401. Another issue was not considered because the matter was pending before the commission. *Id.* at 401. On appeal the six associations argued the points raised below and pressed certain additional issues, including Federal and State constitutional claims. The United States did not join in the separate challenges advanced by the six associations. *United States* v. *State Tax Comm'n,* 481 F.2d at 966. The First Circuit Court of Appeals declined to pass on any of the issues raised by the six associations because the "taxpayers have adequate recourse to state courts for a determination of their claims." *Id.* at 972.

The defendants do not contend that, because the associations have not exhausted their administrative remedies before the Appellate Tax Board, a declaratory judgment should not be granted in this case. We agree that this is an appropriate case to deal with on declaratory judgment. The associations raise a broad challenge to G. L. c. 63, § 11, presenting questions of statutory construction and of constitutional law of importance to every Federal savings and loan association in the Commonwealth. Although not all of the questions are pure issues of law, because, as will be seen, in certain respects there are matters of proof involved, the resolution of the issues by a court in the first instance in a consolidated proceeding makes practical sense. In other situations of a somewhat similar nature, we have approved an exercise of discretion to grant a declaratory judgment regarding a tax statute. See *Sydney* v. *Commissioner of Corps. & Taxation,* 371 Mass. 289, 293-295 (1976), and cases cited. We turn then to the various arguments advanced by the associations.

1. The associations argue that amounts paid members, as dividends or interest, are "operating expenses" which may be deducted in arriving at "net operating income." Section 11 of G. L. c. 63 defines "net operating income" as gross income from all sources less certain items, including "operating expenses." The dispute arises because

"operating expenses" are not defined. The Commissioner has taken a consistent position that payments of interest or dividends to members are not "operating expenses" and hence are not allowable deductions.[5]

We are concerned, of course, with what the Legislature intended by the words "operating expenses." The associations rely in part on general accounting principles in support of their position. We see no basis, however, for assuming that the Legislature intended to import accounting practice into its statutory language and thus to permit accounting principles to be the guide to the meaning of the words "operating expenses." See *Ivan Allen Co.* v. *United States,* 422 U.S. 617, 635 (1975).

The parties have recognized that, if an association's obligation to a member were a debt, any periodic payment might be equated to the payment of interest and thus represent an operating expense; whereas, if periodic payments to members were equated to dividends, these payments would not be an expense in the traditional sense and thus not deductible. We are invited, as courts are in Federal tax cases involving this issue, to analyze the interest of a member to determine whether he has an equity interest or whether he is a creditor. See *Estate of Mixon* v. *United States,* 464 F.2d 394, 402 (5th Cir. 1972).

The relationship between an association and its members has elements common to an ownership status and to a debtor-creditor relationship. The charter of an association refers to account holders in terms of ownership and investment. It describes a holder of a savings account as a member who has (1) a right to vote on the election of directors, and to vote on charter amendments, by-laws, and resolutions, (2) a right to a pro rata distribution of net earnings (as defined) twice a year, (3) a right to withdraw his savings account on thirty days' notice, and

---

[5] The Commissioner's instruction sheet, applicable to excise returns of savings banks, cooperative banks, Federal savings and loan associations, and State savings and loan associations, states that "[a]mounts paid or accrued to depositors, savers or members, whether designated as interest or dividends, are not allowable deductions."

(4) a right to a pro rata share of the value of the association's assets in the event of liquidation, dissolution, or winding up of the association. There is no fixed date of maturity of an association's obligation to its members, nor any fixed rate of return. A member's status is subordinate to creditors and, when withdrawal of funds is requested, a holder of a savings account does not become a creditor. These elements tend to demonstrate that a member is an investor, not a creditor.

The Federal enabling legislation states that one purpose of a Federal savings and loan association is to "provide local mutual thrift institutions in which people may *invest* their funds ..." (emphasis supplied). 12 U.S.C. § 1464(a) (1970). See 12 U.S.C. § 1757(8)(D) (1970), as amended, 12 U.S.C. § 1757(8)(D) (Supp. IV, 1974), authorizing Federal credit unions to "invest" their funds in shares or accounts of Federal savings and loan associations. The Federal decisions concerning the relationship of a member and an association support the position that a member is an investor, not a creditor. See *Porter* v. *Aetna Cas. & Sur. Co.,* 370 U.S. 159, 161 (1962); *id.* at 163 (Douglas, J., concurring); *Wisconsin Bankers Ass'n* v. *Robertson,* 294 F.2d 714, 716 (D.C. Cir.), cert. denied, 368 U.S. 938 (1961). To the extent that the status of a member is determinative of the question whether a periodic payment to him is a payment of interest or the payment of a dividend, the weight of circumstances supports the conclusion that any payment is more analogous to a dividend to an owner than to a payment of interest to a creditor.[6]

---

[6] We recognize that account holders have ready access to their funds as a practical matter and it is likely that they think of their interests as substantially equivalent to cash. In this sense, a holder of an account is unlike the owner of a share in a corporation who cannot withdraw his ownership interest from the corporation at will. In particular circumstances State courts have concluded that the hybrid relationship between a depositor in a savings and loan association and the association creates a debtor-creditor relationship. See, e.g., *Mengele* v. *Christiana Fed. Sav. & Loan Ass'n,* 287 A.2d 395, 397 (Del. 1972) (Federal savings and loan association); *Family Sav. & Loan Ass'n Shareholders' Protective Comm.* v. *Stewart,* 241 Md. 89, 96 (1965) (State savings and loan association).

We come back, however, to the question of the meaning of the words "operating expenses." Even accepting our conclusion that the status of a member is more like that of an owner than that of a creditor, arguably the words "operating expenses" are ambiguous. In such a situation the consistent interpretation of a statute, since its enactment, by the agency charged with the administration of the law is entitled to consideration in resolving the ambiguity. See *Board of Educ.* v. *Assessor of Worcester,* 368 Mass. 511, 515-516 (1975), and cases cited. It is true that the Commissioner's interpretation, although highly visible as part of the instructions concerning the preparation of the appropriate excise return, is not expressed in the form of a regulation. We also recognize that the Commissioner's interpretation has been subject to objection from the beginning and, thus, is not a settled view, belatedly challenged. These facts, however, bear on the weight to be given to the Commissioner's position; they do not bar us from giving consideration to the Commissioner's view. See *Rockland Mut. Ins. Co.* v. *Commissioner of Ins.,* 360 Mass. 667, 675 (1971). We conclude that the Commissioner's position was adopted contemporaneously and publicly with the enactment of the statute and has been maintained consistently since. It is entitled to some weight in resolving the statutory ambiguity.

Our own assessment of the status of a member of a savings and loan association, the views of Congress and Federal courts in assessing the nature of the interest of a member of a Federal savings and loan association, and the Commissioner's interpretation all support the conclusion that dividends and interest paid to members are not "operating expenses" within the meaning of those words in G. L. c. 63, § 11.

2. The associations argue next that the excise imposed by G. L. c. 63, § 11, is invalid because it is not a tax authorized by Congress. A federally chartered savings and loan association is an instrumentality of the Federal government and is immune from State taxation in the absence of congressional authorization. *First Agricultural Nat'l*

*Bank* v. *State Tax Comm'n,* 392 U.S. 339, 340 (1968). *M'Culloch* v. *Maryland,* 17 U.S. (4 Wheat.) 316, 436 (1819). *United States* v. *State Tax Comm'n,* 481 F.2d at 969. A State may impose a tax "on such associations or their franchise, capital, reserves, surplus, loans, or income [no] greater than that imposed by... [the State] on other similar local mutual or cooperative thrift and home financing institutions." 12 U.S.C. § 1464 (h) (1970). This statutory language seems to be concerned largely with preventing unfair tax discrimination against Federal savings and loan associations. See *Laurens Fed. Sav. & Loan Ass'n* v. *South Carolina Tax Comm'n,* 365 U.S. 517, 523 (1961). The variety of taxes authorized by Congress is very broad. Subsequently, we shall consider the associations' arguments that the Massachusetts tax discriminates against Federal savings and loan associations in violation of 12 U.S.C. § 1464 (h) (1970). Here, however, we face the claim by the associations that the Massachusetts excise is not a tax authorized by Congress. The argument is that the excise is an unauthorized tax on gross receipts.

The excise imposed by G. L. c. 63, § 11, is a franchise tax. Originally, the excise on savings institutions was measured solely by the amount of the institution's deposits. St. 1862, c. 224, §§ 4 and 5. We characterized the excise, as originally constituted, as a "franchise tax," a tax on the privilege of doing business in the Commonwealth. See *Provident Inst. for Sav.* v. *Commonwealth,* 259 Mass. 124, 126 (1927), and cases cited. In 1966, income was added to deposits as a measure of the excise. St. 1966, c. 14, § 11. This did not change the nature of the excise. A franchise tax measured in whole or in part by income is not unusual. *State Tax Comm'n* v. *John H. Breck, Inc.,* 336 Mass. 277, 299 (1957) (franchise tax on domestic business corporations under G. L. c. 63, § 32, expressed as an excise measured in part by income). *Commissioner of Ins.* v. *Commonwealth Mut. Liab. Ins. Co.,* 308 Mass. 385, 394-396 (1941) (franchise tax on domestic insurance companies under G. L. c. 63, § 22, expressed as an excise measured by

premiums). Congress has authorized a nondiscriminatory franchise tax.

Even if we were to view G. L. c. 63, § 11, as providing a tax on income, we note that the excise is not directed against gross income but rather against "net operating income." The associations' argument that the excise is not a tax on net income relies largely on the claim, already discussed, that payments of interest or dividends are not allowed as a deduction in arriving at "net operating income." Such payments need not be deducted for the purpose of arriving at a tax on income which is authorized by Congress and certainly need not be deducted to arrive at a franchise tax authorized by Congress.[7]

The associations' final contention that the excise is not authorized by Congress relies on the allowance as a deduction from gross income of "minimum additions during the taxable year to ... [an association's] guaranty fund or surplus required by law or the appropriate federal and state supervisory authorities...." G. L. c. 63, § 11, as appearing in St. 1975, c. 684, § 44. The contention is that the excise under § 11 is not an income tax within the meaning of the authorizing Federal statute because required contributions to a guaranty fund or to surplus are not a true expense, and thus "net operating income," as defined, is not income, but it is something less than income. Without accepting the assumption that such a deduction would change an income tax to something else, we doubt that Congress intended that an excise could not be measured by net income reduced by amounts of income which by law may not be made available, at least immediately, to members or depositors as interest or dividends. In any event, as we have said, the excise is a franchise tax, and the allowance of a deduction from gross income for contributions to a guaranty fund or surplus does not

---

[7] We should not be understood to imply that a nondiscriminatory tax on gross income is forbidden by 12 U.S.C. § 1464(h) (1970). We need not pass on that point.

make the excise any less so.[8] There is no showing that the allowance of such a deduction causes the franchise tax to fail to reflect fairly the annual benefit of the corporate privileges. See *State Tax Comm'n* v. *John H. Breck, Inc., supra* at 285.

3. The associations argue next that the excise is a gross receipts tax which violates the commerce clause of the United States Constitution. They point out that § 11 makes no distinction between income received from activities within the State and activities outside Massachusetts. The record shows that collectively the associations invest a substantial portion of their funds (about 29% in 1974) in mortgage loans secured by real estate located in other States. The record does not show the extent of the contacts of any association with any other State nor does it show whether, in the circumstances of its business operations, any other State does or could impose a tax or excise on any association. Of course, no other State could impose an excise on an association's privilege to do business in Massachusetts.

We have indicated already that § 11 does not constitute a tax on gross receipts. It is a franchise tax. The associations have not argued or shown that a franchise tax which uses net income of a local savings institution as a measure of the excise runs afoul of the commerce clause. Even if we assume, as the associations argue, that the issue of burdening interstate commerce turns on what other States may do, and not what they do in fact (but see *Standard*

---

[8] In their reply brief the associations seem to argue that § 11 is invalid because the First Circuit Court of Appeals has held unconstitutional the excise on deposits under G. L. c. 63, § 11, as applied to Federal savings and loan associations. *United States* v. *State Tax Comm'n,* 481 F.2d at 970. They point out that the excise still applies to deposits of local savings institutions, thus creating discrimination and a failure to achieve the equality of treatment anticipated by the Legislature. This is not a circumstance of which the associations properly may complain. The Federal statute (§ 1464[h]) forbids discrimination against, but not discrimination in favor of, Federal savings and loan associations.

*Steel Co.* v. *Department of Revenue of Wash.,* 419 U.S. 560, 563 [1975]; *General Motors Corp.* v. *Washington,* 377 U.S. 436, 449 [1964]), the associations have not met their burden of establishing that § 11 improperly imposes on interstate commerce. *Norton Co.* v. *Department of Revenue of Ill.,* 340 U.S. 534, 537 (1951). The tax is not invalid per se and, on this record, we cannot determine that it is forbidden by the commerce clause. See *Complete Auto Transit, Inc.* v. *Brady,* 430 U.S. 274, 288 n.15 (1977). The record is devoid of any information with respect to the contacts and activities of any individual Federal savings and loan association in any other jurisdiction.

4. We come next to the first of the associations' arguments which assert that § 11 violates the mandate of 12 U.S.C. § 1464 (h) (1970) that no tax on a Federal savings and loan association shall be "greater than that imposed" by the State on similar local thrift and home financing institutions. The associations contend that their "net operating income" tends to be greater than that of similar institutions because the deduction available to a Federal savings and loan association for "minimum additions . . . to its guaranty fund or surplus required by law or the appropriate federal and state supervisory authorities . . ." (G. L. c. 63, § 11) is generally lower than the deduction available to a similar State savings institution. Additions to a guaranty fund of a local savings institution are required, in particular circumstances, by statute. G. L. c. 168, § 58 (savings banks). G. L. c. 170, § 38 (cooperative banks). Additions to the reserves of a Federal savings and loan association are prescribed by regulations of the Federal Savings and Loan Insurance Corporation. 12 U.S.C. § 1727 (a) (1970), as amended, 12 U.S.C. § 1727 (a) (Supp. IV, 1974). Although circumstances may vary from institution to institution and from year to year, we accept the associations' assertion that, generally, the required contributions of a Federal savings and loan association to its surplus are less than those of similarly situated Massachusetts savings and cooperative banks.

We recognize that it is the effect of the operation of

§ 11 which must be assessed in determining whether the requirements of § 1464 (h) have been met. *United States* v. *State Tax Comm'n,* 481 F.2d at 969-970. We think that the purpose of § 1464 (h) is not frustrated by the circumstance that reserve or guaranty fund requirements differ. The cause of the discrimination is the lower requirements imposed by the Federal regulatory agency on Federal savings and loan associations. The Commonwealth is not the source of the discrimination. The excise statute is wholly neutral. We agree with the conclusion of the United States District Court judge on this issue. *United States* v. *State Tax Comm'n,* 348 F. Supp. at 401, vacated on other grounds, 481 F.2d at 976. The operation of § 11 in conjunction with the less strict reserve requirements applicable to Federal savings and loan associations has not been shown to present a substantial competitive disadvantage. Because of lower reserve requirements, Federal associations tend to have more funds available for immediate distribution to members than similarly situated State institutions. Congress must have recognized that reserve requirements would differ between Federal savings and loan associations and State savings institutions. The possible difference in competitive positions is inherent in the pattern of the Federal legislation.

5. The associations raise three constitutional arguments based on the fact that the allowable deduction for an association's contribution to its surplus is apt to be less than the similar contribution of a State institution to its reserves or guaranty fund.

The operation of the statute does not constitute a denial of due process or equal protection of the laws. There is no fundamental unfairness in the due process sense. Every institution is placed in the same classification for tax purposes, but, even if we were to accept the assertion that the associations are placed in a separate class (because of the action of an agency of the Federal government), such a classification would not be impermissible. Legislative classifications for tax purposes are given wide respect

in the face of constitutional challenges. *Beals* v. *Commissioner of Corps. & Taxation*, 370 Mass. 781, 785 (1976). *Mary C. Wheeler School, Inc.* v. *Assessors of Seekonk*, 368 Mass. 344, 347 (1975). *Weinstock* v. *Hull*, 367 Mass. 66, 70 (1975). *Frost* v. *Commissioner of Corps. & Taxation*, 363 Mass. 235, 248, appeal dismissed for want of substantial Federal question, 414 U.S. 803 (1973). *Austin* v. *New Hampshire*, 420 U.S. 656, 661-662 (1975). *Lehnhausen* v. *Lake Shore Auto Parts Co.*, 410 U.S. 356, 359-365 (1973). *Madden* v. *Kentucky*, 309 U.S. 83, 87-88 (1940).

The fact that the deduction allowed to a Federal savings and loan association is determined by a Federal agency decision concerning reserve requirements is not an unconstitutional delegation of legislative powers in violation of arts. 23 and 30 of the Declaration of Rights of the Constitution of the Commonwealth. This is not a case in which some future Federal law or regulation purportedly is accepted by the Legislature as the law of the Commonwealth. *Opinion of the Justices*, 239 Mass. 606, 612 (1921). In numerous instances a taxpayer's obligation is affected by the conduct of other persons, but those other persons are not exercising the authority of the Legislature to tax. Their action may influence the amount of the tax payable, but the taxing power has not been delegated to them.

The excise imposed by § 11 does not violate the requirement of art. 44 of the Amendments to the Constitution of the Commonwealth that taxes "be levied at a uniform rate ... upon incomes derived from the same class of property." The rate is uniform. The amount of allowable deductions will vary among taxpayers for a variety of reasons, including differences in deductions for contributions to surplus or the guaranty fund. That fact does not make the rate other than uniform. If the associations are placed in a separate classification, and, as we have said, the statute itself makes no such classification, such a classification does not violate art. 44. See *Barnes* v. *State Tax Comm'n*, 363 Mass. 589, 594 (1973).

6. We come then to the second contention of the asso-

ciations that, because of unfair discrimination, the excise violates 12 U.S.C. § 1464(h) (1970). The excise does not apply to credit unions. From this, the associations argue that the excise is invalid because it is not imposed "on other similar local mutual or cooperative thrift and home financing institutions." There is no question that a credit union is a "local mutual or cooperative thrift and home financing institution." See G. L. c. 171, § 2. The issue is whether a credit union is "similar" to a Federal savings and loan association within the meaning of § 1464(h).

Where the question has been presented, credit unions have been regarded as not similar to Federal savings and loan associations. See *First Fed. Sav. & Loan Ass'n* v. *Connelly*, 142 Conn. 483, 492 (1955), appeal dismissed for want of a substantial Federal question, 350 U.S. 927 (1956) (involving a similar claim under § 1464[h]); *State* v. *Minnesota Fed. Sav. & Loan Ass'n*, 218 Minn. 229, 239-241 (1944); *Manchester Fed. Sav. & Loan Ass'n* v. *State Tax Comm'n*, 105 N.H. 17, 19-21 (1963) (involving a similar claim under § 1464[h]).

The associations argue that this is a question of Federal law and that Massachusetts credit unions are not different. We have held that a Massachusetts cooperative bank is similar to a Federal savings and loan association because "[b]oth appeal to the same type of investor and to the same class of borrowers," and because such institutions "are in direct competition with each other." *Commissioner of Corps. & Taxation* v. *Flaherty*, 306 Mass. 461, 462 (1940), cert. denied, 312 U.S. 680 (1941). Later we held that Massachusetts savings banks are similar to Federal savings and loan associations. *Springfield Inst. for Sav.* v. *Worcester Fed. Sav. & Loan Ass'n*, 329 Mass. 184, 185, cert. denied, 344 U.S. 884 (1952).

There are significant differences between credit unions chartered in Massachusetts and Federal savings and loan associations located in Massachusetts. The test for similarity is not what each type of institution might do but rather what each does in fact, although we note that credit unions have greater restrictions imposed on them than the

other institutions.[9] On this record similarity has not been established so as to make the excise invalid because it does not apply to credit unions. Credit unions, unlike the other institutions, must give preference to personal loans, particularly to smaller loans, and may make loans only to members. G. L. c. 171, § 24. Although credit unions are authorized to make loans secured by first mortgages on real estate, in practice they invest a far lesser proportion of their funds in real estate mortgage loans than do the institutions subject to the excise. In 1972, the latest year for which complete statistics are shown in the record, credit unions placed 30.1% of their total investments (in dollars) in real estate mortgages. Federal savings and loan associations had 87.7% of their total investments (in dollars) in real estate mortgages. The comparable figure for Massachusetts cooperative banks was 80.4% and for Massachusetts savings banks, 65.3%. Analyzed solely in terms of the distribution (in dollars) of loans between personal loans and real estate loans, the disparity is even more marked. Federal savings and loan associations had almost 98% of their total loans in real estate mortgages; coopera-

---

[9] In the District Court proceedings in *United States* v. *State Tax Comm'n,* 348 F. Supp. at 400, the judge concluded that the omission of credit unions from the excise was proper because there were "enough statutory differences between the powers, functions and legislative policy behind the creation of credit unions, savings banks, cooperative banks, and savings and loan associations . . . to justify the exclusion of credit unions from the excise." He ruled that there was a lack of similarity for the purposes of § 1464(h) because of "different treatment of credit unions in the nature, powers and duties and purposes of credit unions as contrasted with . . . [the other institutions]."

The major statutory differences are in the power to make loans and in the details of the loans permitted. Compare G. L. c. 171, § 2 (purposes of a credit union are accumulating and investing savings of members and making loans to them for provident purposes), with 12 U.S.C. § 1464(a) (1970) (purposes of Federal savings and loan associations are to provide places where people may invest their funds "in order to provide for the financing of homes . . ."). Compare also G. L. c. 171, §§ 24 (A), 24 (B) (*a*) (4), 24 (B) (*b*) (7), 24 (B) (*b*) (8), with 12 U.S.C. § 1464(c) (1970), as amended, 12 U.S.C. § 1464(c) (Supp. IV, 1974). The authority of credit unions to make loans on real estate mortgages has recently been enlarged. See St. 1977, cc. 20, 22 (effective June 2, 1977).

tive banks had over 97% of their total loans in real estate mortgages; savings banks had over 95% of their total loans in real estate mortgages. Credit unions, on the other hand, had only about 42% of their total loans in real estate mortgages.

The associations have not shown that credit unions compete substantially with Federal savings and loan associations for the same types of investors and the same class of borrowers. Nor have they shown the extent, if any, to which credit unions and Federal savings and loan associations are in direct competition with each other. See *Commissioner of Corps. & Taxation* v. *Flaherty*, 306 Mass. 461, 462 (1940). We do not reach the question whether any or all of the associations would be entitled to relief if it were shown that one Federal association was in substantial competition with one or more credit unions. The proper method of measuring similarity may be a collective, rather than an individual, comparison.

7. A declaratory judgment shall be entered in the Superior Court consistent with this opinion.

*So ordered.*